The DIETRICH CORPORATION et al., Plaintiffs,

v.

KING RESOURCES COMPANY et al., Defendants.

Ted J. FIFLIS, Appellant,

v.

Charles A. BAER, Trustee, Appellee.

Nos. 77–1433, 77–1434 and 77–1435.

United States Court of Appeals, Tenth Circuit.

April 6, 1979.

Ira C. Rothgerber, Denver, Colo. (Robert S. Slosky, Denver, Colo., with him on the brief), of Rothgerber, Appel & Powers, Denver, Colo., for appellant.

John S. Pfeiffer, Denver, Colo. (Stephen Klein, Denver, Colo., with him on the brief), for appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Ted J. Fiflis (Fiflis) appeals from several orders in these consolidated cases which determined his compensation for services rendered as a consultant, notwithstanding that Fiflis was neither a party to the proceedings nor an attorney of record.

The genesis of this appeal lies in the financial downfall of King Resources Company, its affiliates and subsidiaries. As a result, various lawsuits were brought against King Resources Company, its officers, directors and others. By order of the Judicial Panel on Multidistrict Litigation, these cases were consolidated for pretrial proceedings in the United States District Court for the District of Colorado. *In re King Resources Company Securities Litigation*, 342 F.Supp. 1179 (Jud.Pan.Mult.Lit. 1972).

Fiflis, a professor of law at the University of Colorado, and a nationally recognized expert in the field of legal accounting, was employed as a consultant by two law firms which served as lead counsel in the consolidated actions, Saul, Ewing, Remick and Saul (SERS) and Hopper and Kanouff (H&K). His initial agreement with the firms provided for compensation on a straight hourly basis, at the same hourly rate as lead counsel. After some 400 hours of service over a period of two-and-one-half years of the class action litigation, this was changed to a contingent fee arrangement by agreement between Fiflis and the firms. Thereafter an additional 450 hours of service was alleged to have been performed. When the law firms made a "Joint Application of Attorneys for the *Dietrich, Gross* and *Morell* Plaintiffs for Attorneys' Fees and Allowance of Expenses" and "Memorandum in Support Thereof" these hours and the contingent nature of the fee arrangement were shown to the court. The application does not reflect that Fiflis served either as counsel of record or as a fee applicant, rather his time was listed in the "consultants time" category. The application separately listed hours spent by the attorneys of record and "paralegal and law student time."

The trustee in bankruptcy objected to that portion of the fee application treating Fiflis' services, contending the services constituted the unauthorized practice of law since Fiflis was not admitted to practice in Colorado. The trustee objected to any award of attorney's fees to Professor Fiflis, quoting certain letters which he contended showed the law firms had not employed Fiflis as a consultant, law clerk or paralegal, but rather "at all times . . . as a practicing lawyer a fortiori, in the area of his specialty, the liability of accountants."

After a hearing the trial court found that Fiflis' "acts connected with this proceeding were made in good faith and violated no ethical canon or state statute." Nevertheless, the court ruled that the contingent agreement, under which Fiflis would receive a specified hourly rate plus a contingent portion of the total recovered for fees, contravened Canon 3 of the Code of Professional Responsibility, as adopted by the Supreme Court of Colorado. This ruling was predicated upon Disciplinary Rule 3–102 which prohibits a lawyer or law firm from sharing legal fees with a nonlawyer. The court found that Fiflis was a nonlawyer in Colorado, hence his status in these cases must be that of an expert. Therefore the court disapproved the contingent fee arrangement between Fiflis and the law firms, and directed that his compensation "be based on the hourly rate initially agreed upon, or as it might have been adjusted upon realizing the enormity of the project." The court specifically stated, "The Court will not itself reform the precise terms of the agreement. However, it should be noted that the award of attorneys fees in this

case is made on the understanding that payment by class and plaintiffs' counsel to Mr. Fiflis shall not be made on a contingency basis." The two law firms thereafter submitted a proposal, in which Fiflis concurred, for "a fair fee" of $125 per hour plus "interest at 7% per annum computed semiannually," including a proviso that Fiflis would accept 5% of the stock to be received by the firms in lieu of $52,000 cash. When this was presented the court rejected the proposal, finding that the compensation was in excess of the typical hourly rate for attorneys admitted to practice in Colorado. In a later order the court directed that Fiflis be paid at the rate of $75 per hour for 751.5 hours of service, a total sum of $56,362.50, considerably less than he would receive under either the contingent fee arrangement or the renegotiated $125-per-hour plus interest contract.

Prior to this final order Fiflis retained his own counsel to represent his interests in the fee determination. On March 22, 1977, his attorneys entered an appearance on his behalf and requested a conference with the court to discuss Fiflis' fee. On March 23, the day the court entered its order limiting the fee to $75 per hour for 751.5 hours of service, Fiflis filed an affidavit stating that he had provided other consulting services to these law firms amounting to an additional 100.5 hours, and thus should be compensated for a total of 852 hours of time.

On April 4, 1977, Fiflis filed a motion to intervene in the action, and a motion for a new trial and amendment of judgment and for relief from judgment or order. A week later the court denied these motions. Fiflis appeals from the several orders entered March 23 affecting his compensation, denying his request for a conference, denying consideration to the additional hours and refusing to permit him to intervene or to grant a new trial. As grounds for reversal he argues: 1) the district court lacked power to determine his fee; 2) at all times he was a lawyer ethically capable of making a contingent fee agreement with lead counsel; 3) the renegotiated fee contract was beyond the power of the court to set aside; 4) he should have been allowed compensa-

tion for an additional 100.5 hours of service; and 5) the court erred in denying his motion to intervene.

**I**

We hold that Fiflis has a right to appeal the court's determination to this court. Fiflis sought to intervene as a matter of right under the rule of *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). If we should agree that he has a right to intervene, or the trial court abused its discretion in denying a permissive intervention under Fed.R.Civ.P. 24, we may consider the appeal. *Degge v. City of Boulder*, 336 F.2d 220, 221 (10th Cir. 1964). *See also, Pellegrino v. Nesbit*, 203 F.2d 463 (9th Cir. 1953). In view of our disposition of the case we find it° unnecessary to determine whether Fiflis' petition to intervene was improperly denied.

The court's order directly affected Fiflis by ordering the law firms to pay him only a certain amount from the fee which it granted to the attorneys for the class, notwithstanding fee agreements entered into between Fiflis and the attorneys which provided a different compensation. Neither of the law firms, SERS and H&K, which previously represented his interests have appealed. Obviously under all of the circumstances Fiflis is an aggrieved party and his property interest can be protected only by recognizing this as one of those extraordinary cases where a nonparty may be allowed to appeal. *Commercial Security Bank v. Walker Bank & Trust Company*, 456 F.2d 1352, 1354 (10th Cir. 1972); *West v. Radio-Keith-Orpheum Corp.*, 70 F.2d 621, 623–624 (2d Cir. 1934).

**II**

In the joint application for attorneys' fees and expenses filed December 30, 1975, the amount of $657,718.35 in cash plus 10% of the $13,000,000 of King Resources' stock was requested as attorneys' fees. Ostensibly, the total sum sought was based upon the number of hours expended by the

members of the SERS and H&K law firms, their paralegals and student clerks, and by Messrs. Fiflis, Calhoun, Murray and Gray whom they hired. Although the time spent by each of these individuals and groups was carefully documented and attached to the joint application for fees, it is noteworthy that an hourly rate to be applied to the individuals or groups was not specified. The hourly rate method of computing a fee award for SERS and H&K was observed but not recommended by the attorneys. The court in an order filed December 23, 1976, rejected this method in favor of a percentage fee award: "We could here, of course, begin the hours—times—rate approach and then increase that amount by some premium to arrive at a just compensation figure. However, it seems more reasonable in this case, to begin with the 15% fee request and determine its fairness." In that order, the court awarded counsel 15.19% of the total benefits bestowed upon the class, or $1,688,903.53. This award was for $648,903.53 cash and 10% of the unsecured class claim valued at $10,400,000.00. The order also contained the court's prohibition of the contingent fee arrangement between Fiflis and his employers, as well as the court's absolution that Fiflis had not violated any ethical canon or state statute. The court ordered further that the SERS and H&K firms prepare a judgment awarding and apportioning fees and expenses in a manner not inconsistent with the court's order.

When the law firms reported the proposal to compensate Fiflis under the $125-per-hour arrangement the court rejected it on the basis that it exceeded the typical hourly rates for attorneys in the court's jurisdiction. Its order limited the pay to "$56,-362.50 (being 751.5 hours at $75 per hour) as fees for consulting with Plaintiff's Counsel. . . ." No similar ceiling or other limitation was placed upon amounts that might be paid to other persons employed by the firms.

In our view the trial court acted erroneously with respect to Fiflis as to the applicable ethical and legal principles. It certainly had the responsibility and control over the overall fee award for attorneys' services to the class. It made that determination, apparently giving weight to Fiflis' contribution at some level close to its ultimate valuation of $56,362.50. No party seeks to have the overall fee award increased. The only substantive issues before us concern the division of that fee award between Fiflis and the other plaintiffs' counsel, who have not complained concerning their agreements with him.

The court injected itself into this area in its capacity as guardian of the ethics and practice of the legal profession. Because Fiflis is a lawyer living in Colorado, admitted to practice in Illinois since 1957 but not licensed in Colorado until December 1975, after the services rendered here, the court thought Fiflis could not be treated as a lawyer, that he could not have a contingent fee arrangement with a law firm under Disciplinary Rule 3–102(A). That led the court to conclude he could not be compensated at an hourly rate greater than the average for lawyers in Colorado. We disagree with this characterization.

Why are lawyers prohibited from sharing fees on a contingency basis with a layman? This is based upon ethical principles as stated in the Code of Professional Responsibility EC 3–3:

A non-lawyer who undertakes to handle legal matters is not governed as to integrity or legal competence by the same rules that govern the conduct of a lawyer. A lawyer is not only subject to that regulation but also is committed to high standards of ethical conduct. The public interest is best served in legal matters by a regulated profession committed to such standards. The Disciplinary Rules protect the public in that they prohibit a lawyer from seeking employment by improper overtures, from acting in cases of divided loyalties, and from submitting to the control of others in the exercise of his judgment. Moreover, a person who entrusts legal matters to a lawyer is protected by the attorney-client privilege and by the duty of the lawyer to hold

inviolate the confidences and secrets of his client. (Footnote omitted.)

In ABA Comm. on Professional Ethics Opinions, No. 316 (1967), considering fee sharing arrangements between lawyers admitted in different states, it is stated expressly, "A lawyer admitted in one state for the purpose of the canons of ethics is a lawyer everywhere," and

> Only lawyers may share in such a division of fees, but in such cases it is not necessary that both lawyers be admitted to practice in the same state, so long as the division was based on the division of services or responsibility. Canon 34 [now Canon 3]. A lawyer in State I is not, for the purposes of dividing fees with a lawyer in State II, a layman in State II.

Having been trained as a lawyer, indeed acknowledged to be an expert in the field of law and accounting and admitted to practice in Illinois, Professor Fiflis is a lawyer for purposes of the canons. If he were punished for breach of the Canons of Ethics, though he no longer lives in Illinois, no doubt it would have a devastating effect upon his career. If disbarred in Illinois he almost surely would not be allowed to practice his profession anywhere.

There is, of course, a distinction between the ethical framework within which lawyers function and the actual practice of law; each state itself determines what is the practice of law and who may practice law. Professor Fiflis apparently met the residence requirements but did not apply for admission to practice in Colorado until after rendering the services at issue here. Is what he did, providing services in the field of his legal expertise to or through established law firms, with no court appearances as an attorney, the practice of law in Colorado? The cases and ethics opinions we have seen have involved either court appearances as counsel for private clients or the rendering of legal services directly to a client who was not a lawyer or law firm authorized to practice in the jurisdiction. Law firms have always hired unlicensed student law clerks, paralegals and persons who have completed their legal education

but are awaiting admission to the bar, before or after taking a bar examination or fulfilling residency requirements. Virtually every lawyer has served in such a situation and performed services to or through other attorneys for some period prior to his or her own admission to practice in the state where such services were rendered. No one has treated this activity as the unauthorized practice of law, because the licensed attorneys alone remain responsible to the clients, there are no court appearances as attorney, and no holding out of the unlicensed person as an *independent* giver of legal advice. *See Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir. 1966). ABA Op. 316, *supra,* treats this in the context of firm partnerships where not all lawyers are admitted to practice in the same state:

> Of course, only the individuals permitted by the laws of their respective states to practice law there would be permitted to do the acts defined by the state as the practice of law in that state, but there are no ethical barriers to carrying on the practice by such a firm in each state so long as the particular person admitted in that state is the person who, on behalf of the firm, *vouched for the work of all of the others and, with the client and in the courts, did the legal acts defined by that state as the practice of law.*

> .        .        .        .        .

> The important requirement in this respect is simply that the local man must be admitted in the state and *must have the ability to make, and be responsible for making, decisions for the lawyer group.* (Emphasis supplied.)

In these cases an individual trained in the law acts as a filter between the unlicensed person (here Fiflis) and the lay client, adding and exercising independent professional judgment, and, importantly, is an officer of the local court subject to its discipline.

Thus, we hold that Fiflis was entitled to be treated as a lawyer whose services in the instant case did not constitute the unauthorized practice of law. Those portions of the trial court's order limiting the compensation agreement between him and the law

firms therefore must be vacated. We do not consider whether Fiflis has waived his right to a contingent fee by agreeing to the modification to $125 per hour, nor do we treat the 100.5 hours submitted by affidavit March 23, 1977. These are matters between Fiflis and the law firms which hired him, and those firms are not parties seeking relief in this appeal.

It is so ordered.

BARRETT, Circuit Judge, concurring:

I concur in the result reached and in much of the reasoning and rationale of the majority opinion.

I am not prepared to hold that the District Court erred in finding that Professor Fiflis was a nonlawyer in Colorado for the purpose of the contingent fee arrangement entered into between Fiflis and the law firms of SERS and H&K whereby Fiflis was to be compensated at a rate equal to the highest rate charged by the SERS and H&K partners in the case, plus 7.5% of any additional (contingent) fee allowed SERS and H&K. I wish to make it clear that I am referring singularly to the contingent fee-splitting aspect of the agreement. In any event, Colorado provides that a lawyer shall not divide a fee for legal services with another lawyer who is not a partner or associate of the firm or law office unless the client consents to the employment of the other lawyer after a full disclosure that a division of fees will be made and the division is in proportion to the services performed and the responsibility assumed by each. *See:* DR 2–107, App. to Ch. 18 to 20, Code of Professional Responsibility, Vol. 7A, Colo.Rev.Stat.1973. Thus, under the facts and circumstances of this record, I would not disturb the District Court's order of December 23, 1976, refusing to approve the contingent fee arrangement.

Further, I do not believe that the District Court erred in denying Fiflis' motion to intervene because he now purports to attack, on appeal, the very jurisdiction of the District Court to decide his compensation, notwithstanding that Fiflis (who was present at all of the hearings with SERS and H&K) did not challenge the December 23, 1976, order *until* the Court rejected the voluntarily re-negotiated contract (which eliminated the fee-splitting arrangement) by its order of March 7, 1977. In fact, it was not until after the court's order of March 23, 1977, some *three months* following the December 23, 1976, order that Fiflis moved to intervene. In my view, he was out of time insofar as any attack on the fee-splitting agreement set aside on December 23, 1976. Beyond this, however, I would hold that when Fiflis and the law firms of SERS and H&K voluntarily renegotiated the fee arrangement whereby fee-splitting was omitted in favor of an agreed hourly compensation of $125.00 coupled with a per annum interest rate that this mooted any challenge to the District Court's ruling of December 23, 1976.

I concur in the result reached because, notwithstanding my view that Fiflis' motion to intervene was properly denied, I nonetheless believe that Fiflis has standing to challenge the Court's March 23, 1977, order. Under all of the circumstances, Fiflis must be treated as an aggrieved party whose property interest can be protected only by recognizing his entitlement to prosecute an appeal from the March 23, 1977, judgment and order. *See:* 9 Moore's Federal Practice ¶ 203.06 (2d ed. 1948, Supp.) and cases cited in the majority opinion.

I do not believe that the District Court properly resolved the renegotiated contract whereby Fiflis was to receive $125.00 per hour, plus interest. When the Court disapproved of this arrangement, it did so solely on the basis that the hourly rate exceeded the typical hourly rates for attorneys admitted to practice in the Court's jurisdiction and this despite the Court's prior refusal to approve the contingent fee arrangement because Fiflis was a nonlawyer. Fiflis was in nowise referred to in the renegotiated contract as an attorney. He was classified as a consultant, an employee of SERS and H&K. It follows, I believe, that because the controversial fee-splitting arrangement had been eliminated, the District Court should not have concerned itself with Fiflis'

compensation from SERS and H&K, inasmuch as the Court had already awarded those firms their total fees. Thus, the apportionment between them and those they had contracted with should not have concerned the Court.