---

Michael B. Latti, Latti & Associates, Boston, Mass., for plaintiffs.

James Meehan, Maynard Kirpalani, Parker, Coulter, Daley & White, Boston, Mass., for Sperry Rand Corp.

**Frances E. BURRELL, et al., Plaintiffs,**

v.

**SPERRY RAND CORP., Defendant.**

**MDL No. 160–N.**

**Civ. A. No. 74–4399–N.**

United States District Court, D. Massachusetts.

March 22, 1982.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This appears to be the last episode in the long and difficult process of resolving the claims arising from the disastrous Delta air crash at Logan Airport on July 31, 1973. The facts of the case are reported and discussed at considerable length in the opinion of Chief Judge Caffrey on another aspect of this litigation. *In re Aircrash Disaster at Boston, Massachusetts, July 31, 1973,* 412 F.Supp. 959 (D.Mass.1976), *aff'd sub nom. Delta Airlines, Inc. v. United States,* 561 F.2d 381 (1st Cir. 1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d further discussion of the facts of the accident would be helpful to the determination of the cur-

rent matter, which is a dispute over attorney's fees.

The seven actions before me were brought against defendant Sperry Rand Corporation by family members and executors of eight of the 89 people killed in the accident. The suits allege that the accident was caused by a defectively designed flight director manufactured by Sperry. These claims were settled in early February of this year, shortly before trial was to begin. The settlement provided for a total of $1.1 million to be split among the various plaintiffs according to their damages and potential for recovery. The settlement has been approved by all the parties and by the court.[1]

The present dispute over attorney's fees does not affect the terms of the settlement or the total amount paid to any of the plaintiffs. Rather, the dispute concerns the manner in which trial counsel and referring counsel will share the fees relating to the claims arising from the deaths of Perry and Bradley Meehan, two minor children. Trial counsel, Latti Associates, has moved that it be allocated the entire fee of approximately $163,000. Referring counsel, Ronald Perez and Bill Wagner, have opposed this motion, arguing that they are entitled to one-third of the fee in accordance with the agreement made among the attorneys at the time of referral. Perez and Wagner have also petitioned for an attorney's lien to be established against the $163,000, pending resolution by this court of the competing claims to the fee.

Latti does not dispute the terms of the referral agreement. Instead, he relies heavily on the actions and opinions of one of the plaintiffs in the case, Marla Bailey, the mother of Perry and Bradley Meehan. Bailey signed contracts for legal representation with Perez and Wagner in August of 1973. Perez Affidavit, Exhibits C, D, and E. These contracts provided for attorney's fees in the amount of 40% of the client's

recovery, in the event recovery was obtained following the filing of suit. Perez and Wagner then brought suit against Delta on behalf of Ms. Bailey and her ex-husband, Robert Meehan, the father of Perry and Bradley. This suit was settled in the fall of 1974 in the total amount of $310,000.[2]

Following the settlement of the case against Delta, Perez and Wagner apparently decided to refer the remaining claims to counsel who would be in a better position to consolidate and prosecute them in Boston. Accordingly, a referral agreement was arrived at between Wagner and Kaplan, Latti & Flannery, a predecessor to Latti Associates. This agreement clearly provided for any attorney's fees derived from the case to be divided in the proportion of two-thirds to the trial attorneys and one-third to the referring attorneys. See Wagner letter of November 8, 1974, and response of Alan Hoffman of November 26, 1974; Perez Affidavit, Exhibits M and N. Bailey and Meehan were apprised of the referral. See Wagner letters of October 23, 1974 and February 11, 1975; Perez Affidavit, Exhibit G, Supplemental Perez Affidavit, unnumbered exhibit.

Bailey at no time objected to the referral of the case to Latti or the quality of the representation she received from Latti. Bailey Affidavit. She became dissatisfied, however, with the representation she was receiving from Perez and Wagner. As a result, on February 5, 1975, Bailey wrote letters to both Perez and Wagner, purporting to terminate their services. See Latti Memo in Regard to Counsel Fees, Exhibits C2 and C3. Wagner responded on February 11 with a letter offering to sit down and try to work out their differences or, alternatively, prescribing certain steps that Bailey should take if she wished to follow through with the termination (such as payment of the costs incurred by Wagner's office and retention of new counsel). Supplemental

---

1. The settlement was approved at a conference on the record on February 5, 1982.

2. The check from Delta was forwarded on September 19, 1974. Bailey and Meehan signed a

statement approving of the terms of the settlement on October 7, 1974. See Supplemental Perez Affidavit, unnumbered exhibits.

Perez Affidavit, unnumbered exhibit. There is no indication in the record that either course was followed. On February 18, 1975, Perez wrote Bailey a letter indicating that he hoped Wagner's letter and Perez' conversation with Bailey had satisfied her concerns. He further stated that he and Wagner would continue to represent Bailey on any and all claims. Supplemental Perez Affidavit, unnumbered exhibit. The record does not show any response to this letter.

No further information relevant to Bailey's relationship with Perez and Wagner appears on the record. Bailey now takes the position that she discharged Perez and Wagner through the February, 1975 letters. She would prefer that they get no share of the attorney's fees in this case, but she apparently will accede to a division of fees recommended by Latti. Bailey Affidavit.

■ Latti raises several arguments. He contends that because Perez and Wagner were discharged, they are not entitled to recover under the contract of representation. Rather, they should be limited to a recovery in quantum meruit, at best, or nothing at all if the discharge is deemed to have been made for cause. Latti asserts that this court has jurisdiction to allocate the fee in dispute because it relates to the settlement of a pending case. He cites a line of cases demonstrating the court's power to review the validity and reasonableness of a contingent fee arrangement. He cites another line of cases for the proposition that a referral fee is limited by the contribution to the achievement of a recovery. Finally, having attempted to establish that this court has broad equitable power to allocate the attorney's fee in dispute, Latti then argues that this power should be exercised in his favor since his firm did virtually all of the work in the case. See Latti Affidavit.

The short answer is that these arguments are not persuasive. A review of Latti's contentions shows that there is no basis for this court to alter the terms of the referral contract agreed on by the attorneys in the case.

At the outset, it is clear that Marla Bailey has no legally cognizable interest in this dispute. The amount of her recovery will remain the same regardless of who gets the attorney's fees. While she may have strong feelings on where the money should go, I know of no authority which allows a client, at the conclusion of a case, to alter the terms of a referral contract to suit her own desires. The reasons for not allowing the client such a prerogative appear self-evident.

This is not an attorney-client dispute, despite Latti's attempts to characterize it in that manner. It is, therefore, irrelevant whether or not the attempted discharge of Perez and Wagner was effective and whether it was with cause. Those concerns would relate to the possibility of recovery by Perez or Wagner under the contract of representation, but that contract is not the basis of Perez and Wagner's claim. Furthermore, Latti can hardly attack the validity of the representation contract while at the same time he seeks to use it as a vehicle for his own recovery.

■ Since the dispute here is only between Latti and the referring attorneys, it is the referral contract—not the contract of representation—which is relevant. This contract was made at arm's length by experienced attorneys. There are no allegations that Perez or Wagner in any way breached their obligations under the agreement. The contract should be enforced.

Most of the precedent cited by Latti is inapposite to a fee dispute among attorneys. This is not a case of reviewing the reasonableness of a contingent fee contract. Latti, of course, is relying on the contingent fee contract for his 40% recovery, and Bailey also appears satisfied with the size of the contingent fee. Neither can this court assume jurisdiction of this case on the theory that it relates to the settlement of a pending case. The settlement has been consummated, and the entitlements of the parties to the litigation before me have been determined. The case is no longer pending. The division of attorney's fees is a separate

matter independent of the claims raised in this case and the resolution of those claims. Thus there is no proper basis for this court to assume jurisdiction over this ancillary dispute, and I decline to do so.

The only cases cited by Latti which relate to disputes between attorneys over fee shares are the referral fee cases. E.g., *Krinsky v. Smith*, 2 Mass.App.Ct. 851, 312 N.E.2d 591 (1974); *Palmer v. Breyfogle*, 217 Kan. 128, 535 P.2d 955 (1975); *McFarland v. George*, 316 S.W.2d 662 (Mo.1958). None of these cases stands for the proposition advanced by Latti that a referral fee is limited by the contribution to the achievement of a recovery. *Krinsky* is a one-page rescript opinion by the Massachusetts Appeals Court concerning a case very different from this one. The "referring" counsel in *Krinsky* contracted with another attorney to "assist and associate with him in preparation for trial and in the trial." *Id.* In contrast to the Wagner-Latti agreement, the wording of the *Krinsky* agreement would imply that "referring" counsel retained primary responsibility in the case. The evidence, though, showed that the referring counsel did nothing whatever to aid in the case subsequent to the contract and, consequently, the Appeals Court found "a substantial variance between declaration and proof." *Id.* at 852, 312 N.E.2d 591.

*Palmer* and *McFarland* were both cases concerning the application of DR 2–107. In each case the court found in essence that referring counsel had done no work beyond the referral itself. Thus the application of the Code's prescription against finder's fees was appropriate. In this case Latti has not relied on DR 2–107. Furthermore, the evidence indicates that any attempt to do so would be unavailing. Perez and Wagner apparently did substantial work on the claims of the Meehan children in the suit against Delta. The files on this work were forwarded to Latti's office at the time the case was referred. Wagner also forwarded copies of the pleadings in the Delta suit and offered to send a copy of the C.A.B. Report and Transcript. He mentioned that he and Perez were available in the event local counsel was needed to review any matter with the clients. See Letter of Wagner of November 8, 1974; Perez Affidavit, Exhibit M. There is no suggestion anywhere in the record that either Perez or Wagner did anything less than what was asked or expected of them. Their full recovery under the referral contract is consistent with *Palmer*, *McFarland* and DR 2–107.

For all of the foregoing reasons, the Motion to Allocate an Attorney's Fee is DENIED. Because of this denial and my conclusion that I am without jurisdiction to decide this dispute, the petition for attorney's lien is also DENIED.

SO ORDERED.