745 P.2d 166

Richard F. PETERSON, Plaintiff-Appellant,

v.

Jack M. ANDERSON, Defendant-Appellee.

No. 1 CA–CIV 9202.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 11, 1987.

Review Denied Nov. 17, 1987.

Perry, Goodman, Drutz & Musgrove by Mark W. Drutz, Prescott, for plaintiff-appellant.

Walraven & Roberts by Paul L. Roberts, Prescott, for defendant-appellee.

## OPINION

EUBANK, Judge.

This appeal arises from a dispute between two attorneys over a legal fee. Appellant Richard F. Peterson (Peterson) is a licensed attorney in Illinois, who lived in Arizona at the time the dispute arose. He is not, and never has been, admitted to the State Bar of Arizona. Appellee Jack M. Anderson (Anderson) is a licensed attorney in Arizona.

In November 1981, Patricia Paoloni was injured in an automobile collision in Prescott Valley, Arizona. She contacted Peterson, who was residing in Prescott, Arizona, regarding the collision. Peterson discussed her potential personal injury claim with her and advised her that he was not licensed to practice law in the State of Arizona. He then referred her to Anderson.

In December 1981, Peterson and Anderson entered into an agreement in which Anderson agreed to pay Peterson a one-third forwarding fee of the total fee he received from the personal injury claim. This agreement was confirmed by a letter from Anderson to Peterson. In return, Peterson agreed to help prepare the case for trial.

Anderson's fee arrangement with Paoloni provided that he would receive one-third of all sums collected from the claim. This was Anderson's standard fee arrangement with personal injury clients. The arrangement was not influenced by the fact that Anderson had agreed to pay Peterson one-third of the fee he received. The client was informed of the fee-splitting arrangement and expressed no objection.

Peterson offered to begin State Bar procedures to be admitted to practice law *pro hac vice* in Arizona, but Anderson told him it was unnecessary.[1] Peterson helped to investigate the case by interviewing witnesses, taking pictures and attending criminal hearings, as well as acting as a liaison with the client. He did everything Anderson asked him to do. He discovered and informed Anderson that the defendant had $500,000 liability coverage. In March 1982, Anderson learned from another attorney involved in the case that an additional $300,000 of underinsured motorist coverage was available. At this point, negotiations began between the several plaintiffs' attorneys to apportion the total $800,000 available to the plaintiffs. The initial tentative apportionment provided that Anderson's client would receive $136,-000.00, less attorneys' fees, from the $500,-000 liability coverage. Peterson advised the client that she should receive a larger percentage. As a result, she objected to the proposed division, and Anderson obtained a larger share for her, in the amount of $163,549.35.

On March 2, 1983, Anderson sent a check for $106,261.53 to the client. The accompanying letter explained that one-third of the gross recovery, $54,516.45, had been deducted for attorneys' fees to Anderson and Peterson. The letter further explained that the client would receive an additional one-third of the total underinsured coverage.

Anderson sent a letter and check for $18,162.15 to Peterson, representing Peterson's one-third of the attorneys' fees received "to date." Anderson subsequently obtained the client's share of the underinsured coverage, $100,000, in two installments and retained $33,333.33 for his attorneys' fees, but did not send one-third to Peterson. When Peterson demanded payment, Anderson responded that their fee arrangement was limited to attorneys' fees obtained from liability coverage and precluded any fees recovered from underinsured coverage.

As a result of Anderson's refusal to pay the additional attorneys' fees, Peterson filed suit alleging breach of contract. He also filed a complaint against Anderson with the State Bar of Arizona. The State Bar issued an informal reprimand against Anderson stating that he had violated Supreme Court Rule 29(a), DR 1–102(A)(1) and DR 3–102,[2] because of his fee-splitting agreement with Peterson, who was not licensed to practice law in Arizona. DR 3–102 provides that a lawyer "shall not share legal fees with a non-lawyer" subject to several exceptions, not pertinent here.

Anderson and Peterson filed cross-motions for summary judgment in trial court. Peterson claimed that the fee agreement was valid and enforceable, and unambiguously required that Anderson pay Peterson a third of the attorneys' fees recovered from the underinsured coverage. Anderson, on the other hand, claimed that the fee-splitting arrangement violated Arizona law and was therefore unenforceable. The trial court admitted the State Bar informal reprimand into evidence over Peterson's objection in the form of a motion *in limine*.

The trial court granted summary judgment in favor of Anderson solely on the ground that the contract was against public policy. The trial court specifically found that Anderson's "contention that the 'entire fee' referred to in Defendant's [Anderson's] December 15, 1981 letter to Plaintiff [Peterson] does not include underinsured motorist coverage is utterly unsupportable in law, in fact, or as a matter of common sense," and further, "[i]f the fee-splitting arrangement between these two lawyers was not contrary to public policy Plaintiff would be entitled to the sum

1. Although Anderson does not recall Peterson's offer, he does not deny or controvert it.

2. Supreme Court Rule 29(a), consisting of the Code of Professional Responsibility, was replaced by the Arizona Rules of Professional Conduct, Supreme Court Rule 42, effective February 1, 1985. Future references to disciplinary rules (DR's) are to the former Rule 29(a), unless otherwise specified.

We note also that DR 3–102 is, in pertinent part, identical to the presently effective ER 5.4(a), Rule 42, Rules of the Supreme Court.

prayed for in his complaint upon his Motion for Summary Judgment."[3]

Peterson claims on appeal that the contract is not against public policy and should therefore be enforced. He also argues that Anderson should be estopped from claiming the contract is unenforceable because Peterson was not admitted to the State Bar *pro hac vice* since he offered to comply and Anderson told him it was unnecessary. Lastly, he claims that the informal reprimand to Anderson should not have been admitted into evidence and that its admission constituted reversible error.

Before reaching the issues raised on appeal, we note that we agree entirely with the trial court's conclusion that the fee agreement is clear and unambiguous. Under its terms, Peterson would be entitled to a third of all attorneys' fees recovered, including those recovered from underinsured coverage, if the contract is enforceable. Further, we agree that Anderson's conduct, in entering into the contract initially, and then refusing to honor it, was indeed reprehensible.[4]

■ The trial court concluded that the fee-splitting arrangement between the parties was contrary to public policy and unenforceable. We agree. Both parties' participation in the fee-splitting arrangement was in violation of the Rules of the Supreme Court, Code of Professional Responsibility and A.R.S. § 32–262 then in effect. It is undisputed that Peterson was never admitted to the State Bar *pro hac vice* as

required by former Supreme Court Rule 28(c)[5], which provided:

> No person shall practice law in the State of Arizona without being admitted to the bar by compliance with the following rules, provided that an attorney practicing in another state or territory of the United States or the District of Columbia may be admitted by any court on motion to be associated with local counsel in the trial of any particular action, subject to such local rules as such court may then have promulgated.

Clearly, Peterson was prohibited from practicing law in Arizona without, at the very least, associating with local counsel upon motion to the court. In addition, A.R.S. § 32–262, then in effect, reads:

> A person practicing as an attorney or counselor in a court of this state who is not lawfully entitled to practice law in this state shall not be entitled to demand or recover any remuneration for his services.

This statute was repealed effective January 1, 1985, *see* A.R.S. § 41–2371(4), and clearly supports the conclusion of the trial judge.

Peterson nevertheless claims that he relied to his detriment upon Anderson's assurance that he need not be admitted, and therefore Anderson must be estopped from relying on this oversight.

■ Peterson's primary argument is that he is not a nonlawyer within the meaning

---

**3.** The minute entry of July 11, 1986, also stated:
    4. The Court concludes, however, that the fee-splitting arrangement between the parties is violative to public policy and is unenforceable. In order to practice law in the State of Arizona, a lawyer must either be a member of the State Bar or he must submit himself fully to the jurisdiction of the laws of this State and to the jurisdiction of the Supreme Court of this State by formally associating himself with local counsel *pro hac vice*. This Plaintiff did not do that and, therefore, he is precluded from obtaining affirmative relief requested in this court.
    5. Obviously, the activities of Defendant in entering into an improper and unethical fee-splitting arrangement and refusing to honor his contractual obligation with Defendant are reprehensible; Defendant would certainly be precluded from obtaining affirmative relief

from an Arizona court if he were to seek the return of that portion of the fee which he already sent to Plaintiff. It is regrettable that the Defendant shall in this case be the recipient of a favorable judgment as the reward for his improper behavior; however, the court is powerless to enforce this illegal contract.

**4.** We also find ludicrous Anderson's claim that the agreement has already cost him over $18,-000 (in fees paid to Peterson) in light of the fact that he earned fees of nearly $70,000.00, which in all likelihood he never would have earned without Peterson's referral and, perhaps, Peterson's assistance.

**5.** Rule 28(c) is now Rule 33(c), Rules of the Supreme Court. Rule 33(c) is substantially identical to former Rule 28(c).

of DR 3–102 and therefore the fee arrangement did not violate that DR and was not against public policy. "Lawyer" is not defined within the Code of Professional Responsibility or the Supreme Court Rules. *Black's Law Dictionary,* (4th Ed.) however, defines lawyer:

> A person learned in the law; as an attorney, counsel or solicitor; a person licensed to practice law.

> Any person who, for fees as reward, prosecutes or defends cases in courts of record or other judicial tribunals of the United States, or of any of the states, or whose business it is to give legal advice in relation to any cause or matter whatever.

Peterson claims he falls within this definition since he is licensed to practice law in another jurisdiction, and therefore is not a "non-lawyer." He further points out that former Supreme Court Rule 27(b) defined the term non-member as "[a] person licensed to practice law in a state or possession of the United States, but who is not a member of the State Bar of Arizona." Thus, Peterson argues he is a non-member rather than a non-lawyer and the prohibition against sharing fees with a non-lawyer in DR 3–102 does not apply to him.

■ Although there may be a distinction between non-lawyer and non-member, we believe the phrases as used in the Code of Professional Responsibility and Supreme Court Rules may be used interchangeably. *But see Dietrich Corp. v. King Resources Co.,* 596 F.2d 422 (10th Cir.1979) (lawyers admitted to practice law in one state are lawyers in every other state). The purpose of the Supreme Court and the Code is, in part, to prevent persons who are not licensed in Arizona from practicing law in Arizona. Rule 31(a)(3), Rules of the Supreme Court. Although the term non-member includes persons who are actually lawyers, the purpose of the Rules' requirement that persons be members of the State Bar to practice law in Arizona would be thwarted by Peterson's proposed distinction. There is a legitimate public purpose in requiring all persons practicing law in Arizona to be admitted to the State Bar,

and therefore knowledgeable as to state law and procedure, or at a minimum to associate with local counsel to practice law on a particular matter, within the confines of former Rule 28(c). *State Bar of Arizona v. Arizona Land Title & Trust Co.,* 90 Ariz. 76, 366 P.2d 1 (1961). Thus, Peterson was a non-lawyer within the State of Arizona when the fee arrangement was made with Anderson. The fee arrangement therefore violated DR 3–102.

Most of the cases Peterson cites are distinguishable from this case, because they involve fee-splitting arrangements between lawyers of the same state allegedly in violation of DR 2–107 (now ER 1.5(e)). *E.g., Burrell v. Sperry Rand Corp.,* 534 F.Supp. 680 (D.Mass.1980); *Martinez v. County of Los Angeles,* 151 Cal.Rptr. 50, 87 Cal.App.3d 189 (1978); *Kuhn, Collins & Rash v. Reynolds,* 614 S.W.2d 854 (Tex. 1981). Each of these cases turned on the question of whether the referring attorney performed work in proportion to the payment received, a requirement of DR 2–107. Since this is not a question on appeal, the cases have no application here. *See also Baron v. Mullinax, Wells, Mauzy & Baab, Inc.,* 623 S.W.2d 457 (Tex.App.1981).

Peterson cites only one case, *Dietrich v. King Resources Co.,* 596 F.2d 422 (10th Cir.1972) which considers fee-splitting between a licensed and unlicensed lawyer. In that case, the court held that a Colorado law professor, not licensed in Colorado, could share a contingent legal fee with a Colorado law firm for extensive consulting work performed by him. We do not find *Dietrich* to be persuasive.

*Dietrich* can be distinguished from our case on several grounds. Particularly, Peterson, by his own admission, acted as a liaison with the client. He was an independent giver of legal advice. Dietrich had no such client contact. Also, Peterson acted as a source of legal advice to the client. However, Dietrich's role in the case was essentially that of an expert in the field of legal accounting. In our case, the salient point is that under Arizona law, Arizona Supreme Court Rules have the same force and effect as state statutes, and are equal-

ly binding. *Valley Nat'l Bank of Arizona v. Meneghin,* 130 Ariz. 119, 634 P.2d 570 (1981). Thus, the public policy of this state requires that lawyers licensed in other jurisdictions must either apply for admission to the State Bar on a *pro hac vice* basis or become licensed to practice law in the State of Arizona, as required by former Rule 28(c), now Rule 33(c), of the Rules of the Supreme Court. In addition, A.R.S. § 32–262 prohibits any remuneration to Peterson.

█ Finally, we are of the opinion that Peterson's estoppel contention is without merit. Arizona law is well-settled that the defense of estoppel cannot be invoked against an agreement which is void as against public policy. *Clark v. Tinnin,* 81 Ariz. 259, 263, 304 P.2d 947, (1956). The Arizona Supreme Court stated in *Clark:*

> On several occasions in the past this court has ruled that the defenses of waiver and estoppel cannot be invoked against an agreement which is void as against public policy, (citation omitted), and we see no reason for altering this sound doctrine now.

81 Ariz. at 259–60, 304 P.2d at 950.

Peterson also claims that several State Bar Ethics Opinions lend support for his position that no prohibition exists against fee-splitting arrangements between State Bar members and out-of-state lawyers who are not members of the State Bar. These opinions, however, are not based upon DR 3–102 and are therefore not applicable. See State Bar Opinion Nos. 73–12, 76–8, 80–8. These opinions deal with the formation of genuine interstate law partnerships, which is not involved here.

We conclude that the fee-splitting arrangement between Peterson and Anderson is unenforceable because it is against public policy. This court has stated that "if the acts to be performed under a contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of an action, then recovery should be denied." *Mountain States Bolt, Nut & Screw Co. v. Best-Way Transportation,* 116 Ariz. 123, 124, 568 P.2d 430, 431 (App.1977); *see also Ruelas v. Ruelas,* 7 Ariz.App. 98, 436 P.2d 490 (1968). The acts to be performed under the fee arrangement for attorneys' fees required Peterson to "participate in the pretrial workup," or, in other words, to practice law.[6] This was clearly in violation of the Code of Professional Responsibility and A.R.S. §§ 32–261, 32–262 (in effect at the time) and therefore against public policy.

Peterson also argues that the trial court improperly admitted as part of the papers filed on this cross-motion for summary judgment the State Bar's informal reprimand issued against Anderson, which constituted reversible error. We need not reach this question. Anderson was arguing that the fee arrangement was unenforceable as violative of public policy. Thus, the question was one of law, properly before the trial court.

Finally, although it is unethical for Anderson to keep the one-third of the $33,-000 promised Peterson, we have no authority to impose a sanction. However, the Arizona Supreme Court does have such power. *See In the Matter of Swartz,* 141 Ariz. 266, 686 P.2d 1236 (1984).

Anderson has requested his attorney's fees incurred on appeal pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure, and A.R.S. § 12–341.01. In our discretion, we deny this request.

Affirmed.

CORCORAN, J., and DAVIS, J. Pro Tem., concur.

NOTE: The Honorable RICHARD M. DAVIS, a judge pro tempore of a court of record has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizo-

---

**6.** Even if Peterson's fee was to be a forwarding fee only, the agreement would still be against public policy. DR 2–107 requires that fee-splitting arrangements be in proportion to services actually performed. *See, e.g., Burrell v. Sperry Rand Corp.,* 534 F.Supp. 680 (D.Mass.1980). *See Hackin v. State,* 102 Ariz. 218, 427 P.2d 910 (1967) for a definition of the practice of law. *Cf. Moseley v. Brewer,* 139 Ariz. 540, 679 P.2d 563 (App.1984).

na Const. art. VI, § 31; A.R.S. §§ 12–145; 12–146; 12–147.