ANIMAL LOVERS VOLUNTEER ASSO-
CIATION, INC.; Pauline Baerg; Lisa
Curran; Pat Llewelyn; Harold Baerg;
and Lynne Garmston, Plaintiffs–Appel-
lants,

v.

Frank CARLUCCI, in his official capaci-
ty as Secretary of the Department of
Defense; William Ball III, in his offi-
cial capacity as Secretary of the Navy;
Rolf Wallenstrom, in his official capac-
ity as Regional Director of the United
States Fish and Wildlife Service; Unit-
ed States Navy; and United States Fish
and Wildlife Service, Defendants–Ap-
pellees.

Nos. 86–6428, 86–6679.

United States Court of Appeals,
Ninth Circuit.

Feb. 9, 1989.

Timothy T. Coates, and Greines, Martin,
Stein & Richland, Beverly Hills, Cal., for
plaintiffs-appellants.

Maria A. Iizuka, Appellate Section, Land
and Natural Resources Division, Dept. of
Justice, Washington, D.C., for defendants-
appellees.

Before BROWNING, NELSON and
CANBY, Circuit Judges.

ORDER

Appellants brought this action under the
Administrative Procedure Act, 5 U.S.C.
§§ 701–706, and the National Environmen-
tal Policy Act, 42 U.S.C. § 4332, challeng-
ing the decision of the United States Fish
and Wildlife Service to eradicate the red
fox population of the Seal Beach National
Wildlife Refuge. The project is intended to
protect two endangered species of birds
believed threatened by the foxes. The Ser-
vice prepared an Environmental Assess-
ment of the project which concluded eradi-
cation of the foxes would have no signifi-
cant impact on the human environment.
Consequently, no Environmental Impact
Statement was prepared. The suit sought

declaratory judgment that the Assessment did not support a finding of no significant impact and an injunction prohibiting the eradication of the foxes until an Environmental Impact Statement is prepared.

The district court denied relief; we reversed in an unpublished memorandum. *Animal Lovers Volunteer Association, Inc. v. Carlucci*, Nos. 86–6428, 86–6679 (9th Cir. June 13, 1988) [849 F.2d 1475 (table) ] [hereinafter cited as Memorandum Decision]. Although we granted the declaratory relief sought, *id.* at 4, we remanded for a determination whether injunctive relief should be granted. *Id.* at 7.

Appellants now seek attorney's fees for both trial and appeal under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA).

### I

Appellants are "prevailing parties" to whom attorney's fees may be awarded under § 2412(d).

The Government is mistaken in its view that fees may not be awarded until appellants win a judgment which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." The fact the dispute between the parties may continue does not preclude a fee award. *Hanrahan v. Hampton*, 446 U.S. 754, 756–57, 100 S.Ct. 1987, 1988–89, 64 L.Ed.2d 670 (1980) (per curiam); *Mantolete v. Bolger*, 791 F.2d 784, 787 (9th Cir.1986) (fees awarded though liability remained to be tried). *Mall Properties, Inc. v. Marsh*, 841 F.2d 440 (1st Cir.1988) (per curiam), is not to the contrary. It defines "final judgment" for purposes of determining appellate jurisdiction. This is not the standard for attorney fee awards. *See Hanrahan*, 446 U.S. at 757, 100 S.Ct. at 1989.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the Supreme Court stated: "A typical formulation is that 'plaintiffs may be considered 'prevailing parties' for attor-ney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).[1] *See also McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983). Appellants easily satisfy this standard. Our determination that the Environmental Assessment did not support a finding of no significant impact fully satisfied appellants' prayer for declaratory relief. Appellants are " 'as a practical matter,' in a markedly better position than at the outset of [their] lawsuit." *Mantolete*, 791 F.2d at 787 (*quoting Hanrahan*, 446 U.S. at 758–59, 100 S.Ct. at 1989–90).

Cases holding a party must prevail on substantive rather than procedural grounds (*e.g., United States v. 2.61 Acres*, 791 F.2d 666, 672 (9th Cir.1985) (per curiam)), are irrelevant; appellants won a determination on the merits of their claim for declaratory relief. *See Hanrahan*, 446 U.S. at 757, 100 S.Ct. at 1989.

### II

The Government has failed to show its position was "substantially justified," 28 U.S.C. § 2412(d)(1)(A).

The test is one of reasonableness. *See, e.g., League of Women Voters v. FCC*, 798 F.2d 1255, 1257 (9th Cir.1986). As the Supreme Court recently said:

> the [connotation] most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"— that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit
>
> . . . .

*Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *see also Ramon–Sepulveda v. INS*, 863 F.2d 1458, 1459 (9th Cir.1988) (unsigned order).

*See McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983).

---

1. *Hensley* involved a fee award under 42 U.S.C. § 1988, but we define "prevailing party" under EAJA just as that term is defined under § 1988.

The decision to forego an Environmental Impact Statement was not reasonable. As we noted in deciding the merits, the Environmental "[A]ssessment simply ignored the impact the eradication might have on [the] overall ecological balance of the area." Memorandum Decision at 5. Further, the assessment "contains no discussion of the effect the program may have on the environment other than upon the birds it sought to protect." *Id.* This omission alone was sufficient to render the Assessment inadequate. *Id.; see also Save the Yaak Comm. v. Block,* 840 F.2d 714, 717–18 (9th Cir.1988).

The Government's contention that no study of the consequences of the eradication was required because the foxes were not indigenous to the Wildlife Refuge ignored our holding in *American Horse Protection Ass'n v. Andrus,* 608 F.2d 811, 814–15 (9th Cir.1979), that a permanent, large-scale reduction in the population of a nonindigenous species may well have environmental significance. As we stated in disposing of this case, "There was evidence that the foxes had been a part of the ecological community for nearly 100 years. The Secretary could not simply assume without reason that their removal would be without consequences." Memorandum Decision at 6.

We concluded that the inadequacies of the Environmental Assessment in light of settled law were obvious. *See* Memorandum Decision at 4–7.

### III

There are no special circumstances that would make an award of fees unjust. The litigation on the merits did not involve a close or novel question. *Cf. United States v. Gavilan Joint Community College Dist.,* 849 F.2d 1246, 1249 (9th Cir.1988).

### IV

■ Section 2412(d)(2)(A)(ii) imposes a cap of $75 per hour on attorney's fees that may be exceeded only upon a showing of a "special factor" or upon an adjustment for inflation.

Appellants claim as a special factor justifying fees in excess of $75 per hour the difficulty of obtaining counsel "with special expertise in litigating complex public interest environmental cases against the federal government," and the difficulty of obtaining appellate counsel "with the considerable expertise in appellate matters that would be necessary to successfully prosecute an appeal against the enormous resources of the federal government."

Although appellants' claim that suitably qualified trial and appellate counsel were of limited availability falls within the bare text of the statute, it does not fall within the Supreme Court's interpretation of this provision. The Court explained,

> If "the limited availability of qualified attorneys for the proceedings involved" meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the $75 cap—since the "prevailing market rates for the kind and quality of the services furnished" are obviously *determined* by the relative supply of that kind and quality of services.

*Pierce,* 108 S.Ct. at 2553 (original emphasis). Instead the Court concluded,

> We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

*Id.* at 2554.

Environmental litigation may indeed require "distinctive knowledge or specialized skill" and constitute "an identifiable practice specialty." *Id.* But appellants have not established that their appellate counsel, undoubtedly an able attorney, has specialized in environmental work. He recites a broad range of experience in appellate practice, but identifies no environmental cases he has presented on appeal. The very diversity of his practice suggests "an extraordinary level of the general lawyerly knowledge and ability useful in all litigation," rather than specialized expertise. *Id.*

The fact that counsel must oppose "the enormous resources of the federal government" adds nothing. That factor is present in every fee request under EAJA. Indeed, the disincentive to suit created by those resources provides the very rationale for EAJA. H.R.Rep. No. 1418, 96th Cong., 2d Sess., at 5–6, *reprinted in* 1980 U.S. Code Cong. & Admin. News pp. 4953, 4984, 4984.

Appellants claim "an increase in the cost of living ... justifies a higher fee" under § 2412(d)(2)(A)(ii). The Government does not argue an adjustment for inflation is unwarranted; it merely notes that EAJA does not compel such an adjustment. The case the Government cites for this proposition also states, "[e]xcept in unusual circumstances, ... an increase should be granted." *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir.1988). The Government identifies no "unusual circumstances" that would make an inflation adjustment inappropriate in this case. To withhold an inflation adjustment without reason would undermine the purpose of EAJA to remove the financial disincentive to challenge wrongful government action. *Cf. id.*

Appellants are entitled to an adjustment of the $75 cap to reflect inflation between October 1981 and the present as measured by the Consumer Price Index for All Urban Consumers (CPI–U). *Ramon–Sepulveda,* at 1463. Under the formula recently adopted by this court, *id.* at 1463 & n. 4, appellants are entitled to an hourly rate of $96.76.[2]

Appellants report 146.0 hours of attorney time on appeal. We believe these hours are reasonable and therefore award appellants attorney fees in the amount of $14,126.96.

We remand appellants' petition for attorney's fees and costs prior to appeal for consideration by the trial court.

SO ORDERED.

---

2. $96.76 = $75 \times (120.5/93.4)$ where 93.4 is the CPI–U for October 1981 and 120.5 is the CPI–U for December 1988, the most recent month for which statistics are available. *See* U.S. Dept. of Labor, Bureau of Labor Statistics, Consumer Price Index (available January 19, 1989 in Dialog Computer Database File 175); 27 Gov't Empl.Rel.Rep. (BNA)—(Jan. 30, 1989).