**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; THE INTERNATIONAL
FUND FOR ANIMAL WELFARE;
CETACEAN SOCIETY INTERNATIONAL
OCEAN FUTURES SOCIETY; JEAN-
MICHEL COUSTEAU,
                    *Plaintiffs-Appellees,*

v.

DONALD C. WINTER, in his official
capacity as Secretary of the Navy;
UNITED STATES DEPARTMENT OF THE
NAVY; CARLOS M. GUTIERREZ, in
his official capacity as Secretary
of the Department of Commerce;
NATIONAL MARINE FISHERIES
SERVICE; WILLIAM HOGARTH, in his
official capacity as Assistant
Administrator for Fisheries of the
National Oceanic and Atmospheric
Administration; CONRAD C.
LAUTENBACHER, Jr., Vice Admiral,
in his official capacity as
Administrator of the National
Oceanic and Atmospheric
Administration,
                    *Defendants-Appellants.*

No. 07-55294

D.C. No.
CV-06-04131-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

12945

Argued and Submitted
June 6, 2008—Pasadena, California

Filed September 16, 2008

Before: William C. Canby, Jr., Jay S. Bybee, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

**COUNSEL**

Kathryn E. Kovacs, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the defendants-appellants.

Richard B. Kendall, Irell & Manella LLP, Los Angeles, California; Joel R. Reynolds, Natural Resources Defense Council, Inc., Santa Monica, California, for the plaintiffs-appellees.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Defendant-Appellant, Donald C. Winter (the Navy), appeals the district court's decision to award attorneys' fees to Plaintiffs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Navy claims that (1) the amount of the award for some of the attorneys working on the case should not have been enhanced above the statutory rate, (2) the limited extent of Plaintiffs' success merited a reduction in fees, and (3) the award of appellate fees was improper because the fee application was filed in the district court, not in the court of appeals. We conclude that the district court did not abuse its discretion on the second and third issues. However, because we conclude that the standard used by the district court to determine the first issue constitutes an error of law, we vacate the district court's order awarding fees and remand for additional fact finding and recalculation of fees in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   The RIMPAC 2006 Suit

On June 28, 2006, the Natural Resources Defense Council (NRDC), along with several other environmental groups (collectively, Plaintiffs) filed suit (hereinafter *NRDC II*) against Winter, in his capacity as Secretary of the Navy, alleging that the Navy had violated the National Environmental Policy Act (NEPA), the Marine Mammal Protection Act (MMPA), and the Administrative Procedure Act (APA). Plaintiffs also filed an application for a temporary restraining order (TRO) and a preliminary injunction to enjoin the Navy's use of mid-frequency active sonar during its Rim of the Pacific (RIM-PAC) 2006 training exercise. RIMPAC 2006 was a major multi-national Navy training exercise that took place in the waters surrounding the Hawaiian Islands from June 26 to July

28, 2008. Starting July 6, the training included the use of mid-frequency active sonar, which is known to disrupt some of the marine mammals that live in those waters. Attorneys at the California-based firm Irell & Manella LLP (Irell) provided outside representation to the environmental groups.

On June 30, the Navy invoked the national defense exemption contained in the MMPA, which had the effect of exempting all mid-frequency active sonar activity from compliance with the MMPA. The Navy also stated its intent to comply with the mitigation measures set forth in the Incidental Harassment Authorization approved by the National Marine Fisheries Service on June 27.

On July 3, the district court granted the TRO on the NEPA claim, enjoining the use of mid-frequency active sonar for ten days pending a hearing on whether to grant a preliminary injunction, and also ordered the parties to "meet and confer . . . to determine if an agreement can be reached on mitigation measures that would avoid the need for further provisional relief in this case." The Navy immediately appealed the TRO to this court.

The parties settled four days later, on July 7, one day after the scheduled start of sonar training. As part of the settlement, the Navy agreed to implement or modify several mitigation measures it had previously rejected. The TRO appeal was voluntarily dismissed on motion by the parties prior to any ruling on the merits. In this case, we consider the propriety of the district court's award of attorneys' fees.

## B.   Companion Case

At the time Plaintiffs brought this suit, a companion case was concurrently being litigated in the same court, in front of the same judge. *NRDC v. Winter*, No. CV 05-7513 FMC (C.D. Cal. filed Oct. 19, 2005) (hereinafter *NRDC I*). At the time the TRO was granted in *NRDC II*, the attorneys were still

litigating threshold issues such as jurisdiction and standing in *NRDC I*. In fact, the Second Amended Complaint in *NRDC I* was not filed until April 2008, and the case is still being litigated.

*NRDC I* challenges the Navy's use of mid-frequency active sonar in all of its testing and training exercises, including the biennial RIMPAC training exercise, alleging violations of NEPA, APA, and the Endangered Species Act. The same legal issues presented in this suit — whether the Navy complied with certain federal statutes — remain at issue in *NRDC I*. The factual issues are also substantially the same, except that *NRDC I* covers a wider range of Navy training exercises.

Finally, the *NRDC I* Plaintiffs are all involved in this suit with the exception of the League for Coastal Protection. Plaintiffs' counsel for *NRDC I* included all of the Irell attorneys, the senior NRDC attorneys, and one of the junior NRDC attorneys litigating this suit. At least two of the Navy's attorneys in *NRDC I* are also involved in this case.

## C.   Background of Plaintiffs' Attorneys

Plaintiffs' attorneys consisted of two senior and two junior in-house attorneys from NRDC, as well as one senior litigation partner and three junior associates from Irell. The Navy does not contest the award of enhanced fees for the efforts of the two senior NRDC attorneys, so we do not discuss their qualifications.

### 1.   Junior NRDC attorneys

During the prosecution of this suit, one junior NRDC attorney served as counsel in *NRDC I* and in *NRDC v. Gutierrez*, 457 F.3d 904 (9th Cir. 2006), the latter also being a challenge to the Navy's use of low-frequency sonar. At NRDC, she worked primarily on marine mammal protection and developed expertise on the specific issue of high-intensity under-

water sound. She has co-authored a journal article and a report on the topic of sonar and has spoken at the United Nations and other environmental law fora on the issue. She also served as part of a working group drafting guidelines for the conduct of noise-producing activities in the Mediterranean Sea.

The second NRDC junior attorney had graduated from law school and had worked as a full-time consultant-paralegal at NRDC for over ten years, but was not a member of the bar at the time this suit was settled. He also had developed expertise in the area of high-intensity underwater sound. He is the author of two editions of a report and the co-author of a journal article on the topic of noise and its effect on mammals, and the co-author for the entry for "sonar" in the *Encyclopedia of Tourism in Marine Environments*. He had been appointed an Alternate Member and Subcommittee Member to the Federal Advisory Committee on Acoustic Impacts on Marine Mammals convened by the U.S. Marine Mammal Commission, and served on the review panel for the Congressional Research Service's 2005 report to Congress entitled "Active Military Sonar and Marine Mammals." Finally, he had spoken at numerous events on the impact of sonar on marine mammals.

### 2. Irell attorneys

The Irell senior litigation partner who served as co-lead counsel in this case has a broad litigation practice. There is evidence in the record that he has experience in alternate dispute resolution and arbitration, appellate litigation, entertainment transactions, intellectual property litigation, and general litigation. His environmental law experience consisted of serving as co-lead counsel in *NRDC I* and one other case, *NRDC v. U.S. Dep't of the Navy*, 857 F. Supp. 734 (C.D. Cal. 1994). In the 1994 case, NRDC challenged the Navy's testing of explosives near the Channel Islands National Marine Sanctuary on the basis of evidence of harm to marine life from

high-intensity sound as well as the Navy's alleged failure to comply with NEPA and MMPA.

Three junior associates at Irell also served as counsel in *NRDC I*. According to the record, however, none of these three associates has any other prior experience in environmental litigation. Nor is there any indication that any has authored any articles, done any research, participated in any fora, or otherwise developed a specialty in environmental matters. Nothing in the record suggests that environmental litigation was a practice area for any of the three Irell associates.

## D.   Motion for Attorneys' Fees Under EAJA

After *NRDC II* was dismissed, NRDC filed a motion pursuant to the EAJA for fees and costs in the district court for the work done by NRDC and Irell attorneys. The district court granted the motion, awarding fees totaling $437,584.24 for work in the district court and on the TRO appeal. In doing so, the district court first found that Plaintiffs were eligible for attorneys' fees under the EAJA and that they were the prevailing parties. The court also found that the Navy's position was not substantially justified such that an award of fees would be unmerited. The Navy does not contest these findings on appeal. The district court also deducted hours that it found did not directly and substantially contribute to meeting the Plaintiffs' litigation goals. NRDC and Irell do not contest these deductions.

In determining the fee, the district court applied an enhanced hourly rate above the statutory cap of $125 per hour, finding that counsel brought distinctive skills unavailable at the statutory rate. The district court found distinctive skills for two reasons. First, it found that environmental litigation is an identifiable practice specialty requiring distinctive knowledge. Second, it found that all the attorneys involved in *NRDC II* had highly specialized skills acquired from *NRDC I* because the cases involved similar factual and legal issues

on behalf of nearly identical clients, against the same agency. The Navy timely appeals the fee award.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the amount of attorneys' fees awarded by a district court for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 571 (1988). However, " 'any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable *de novo*.' " *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991) (quoting *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir. 1985)).

## DISCUSSION

**[1]** The EAJA, 28 U.S.C. § 2412, allows prevailing parties to recover attorneys' fees in cases brought by or against the United States unless the position of the United States in the litigation was substantially justified, or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).[1] The Navy does not contest the district court's decision to award fees in this case, but rather the amount of the fee award. Specifically, the Navy challenges the district court's decision to award enhanced fees to several attorneys, its refusal to reduce fees on account of limited success, and the court's award of attorneys' fees to Plaintiffs for hours spent preparing the appeal of the TRO.

---

[1]28 U.S.C. § 2412(d)(1)(A) states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

## A. Enhanced Fees

In *Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991), we consolidated into a three-part test the relevant law governing what must be proven in order to be awarded enhanced attorneys' fees: (1) "the attorney must possess distinctive knowledge and skills developed through a practice specialty;" (2) "those distinctive skills must be needed in the litigation;" and (3) "those skills must not be available elsewhere at the statutory rate." *Id.* at 1496.

In this case, the Navy concedes that the senior in-house attorneys at NRDC were entitled to enhanced fees due to their experience in environmental litigation. The Navy argues, however, that the junior NRDC in-house attorneys and the Irell attorneys were not entitled to an enhanced fee due to their limited experience in environmental litigation. The Navy further asserts that any distinctive skills these attorneys provided were not "needed" in the litigation. Finally, the Navy claims that NRDC failed to show that the skills provided by the Irell and junior NRDC in-house attorneys were available elsewhere at the statutory rate.

We first conclude that the Irell junior attorneys did not possess "distinctive knowledge and skills developed through a practice specialty." We thus hold that the district court should not have awarded enhanced fees for their work on this case and we therefore need not explore the Navy's remaining claims with respect to them. Because we conclude that both the Irell senior partner and the NRDC junior attorneys *did* possess distinctive knowledge and skills, we will examine the Navy's latter two claims with respect to them.

### 1. Practice Specialty

#### a. The Award of Enhanced Fees to Irell Junior Attorneys

**[2]** The EAJA allows for the award of attorneys' fees "based upon the prevailing market rates for the kind and qual-

ity of the services furnished," capped at $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the *limited availability of qualified attorneys for the proceedings involved*, justifies a higher fee." 28 U.S.C. § 2412(d)(1)(D)(2)(A) (emphasis added).

**[3]** In *Pierce*, 487 U.S. at 571, the Supreme Court examined the phrase "limited availability of qualified attorneys for the proceedings involved" in the EAJA. The Court explained that the statute contemplated attorneys qualified "in some specialized sense, rather than just in their general legal competence," such that "attorneys hav[e] some distinctive knowledge or specialized skill needful for the litigation in question." *Id.* at 572. Distinctive knowledge, in turn, may be "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* Although a court may find that other "special factors" counsel in favor of an enhanced fee award, these special factors may not be "of broad and general application." *Id.* at 573. For example, the *Pierce* Court concluded that the district court in that case had abused its discretion by relying on broad factors such as the " 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and 'the results obtained.' " *Id.* The Court concluded that consideration of these factors was inappropriate because, as opposed to factors demonstrating specialized knowledge or skill, these factors merely reflected an "extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id.* at 572.

Though the *Pierce* Court mentioned only patent law and foreign law in its discussion of specialties, subsequent cases in our circuit have recognized that other practice specialties may qualify as "distinctive knowledge or skills" for which enhanced fees are appropriate. *See, e.g., Pirus v. Bowen*, 869 F.2d 536, 541 (9th Cir. 1989). For example, in *Pirus*, we affirmed an award of enhanced fees to attorneys who had developed a social security practice specialty. *Id.* We rea-

soned that, like patent lawyers, they had "expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of the needs of a particular class of clients — in this case, the elderly — and of how those needs could best be met under the existing statute and regulations." *Id.* The attorneys had also litigated a similar case "all the way to the Supreme Court." *Id.*

**[4]** With these principles in mind, we conclude that the district court abused its discretion in awarding enhanced fees to the junior Irell attorneys. Contrary to the requirements set forth in *Reilly* and *Pirus*, the Plaintiffs never established that these attorneys had a practice specialty at all, much less distinctive skills that were "needed in the litigation."

Notwithstanding this deficiency, the district court analogized the junior Irell attorneys to counsel in *Pirus*, and found that the junior Irell attorneys here acquired distinctive skills litigating a concurrent companion case before the same court, involving similar factual and legal issues, on behalf of nearly identical clients, and against the same agency, including some of the same opposing counsel. The district court further found that this experience provided Plaintiffs with unique skills and knowledge unavailable elsewhere at the statutory rate.

**[5]** We do not agree with the district court's reasoning. Although the Supreme Court has not precisely enumerated what may constitute a practice specialty or special factor, we decline to expand these terms to encompass the degree of expertise that the record indicates the junior attorneys may have gained here from participating in the companion case.[2]

---

[2]Indeed, some of our sister circuits read "special factor" more narrowly than we do, allowing enhanced fees only where the specialities "requir[e] technical or other education *outside* the field of American Law," and not on the basis of a practice specialty developed via litigation experience. *In re Sealed Case 00-5116*, 254 F.3d 233, 235 (D.C. Cir. 2001) (quoting *Waterman S.S. Corp. v. Mar. Subsidy Bd.*, 901 F.2d 1119, 1124 (D.C. Cir.

We expect *all* attorneys to be experts of their own cases and their clients' litigation goals.

Having held that the Irell junior attorneys did not acquire sufficiently distinctive skills merely by participating in litigation surrounding the companion case, we see no other basis for awarding them enhanced fees. Although environmental litigation may constitute an identifiable practice specialty, Plaintiffs must first establish that their counsel had such a specialty. *Animal Lovers Volunteer Ass'n, Inc. v. Carlucci*, 867 F.2d 1224, 1226 (9th Cir. 1989), *abrogated on other grounds by Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001). Here, the record indicates that the junior Irell attorneys had no experience in environmental law other than what they gained in the concurrently litigated companion case.

**[6]** Plaintiffs also point to a variety of exigent circumstances surrounding the litigation in *NRDC II*. Specifically, they argue that the time-sensitive circumstances created by the Fourth of July weekend, the successful resolution of the case in ten short days, and the government's use of seventeen attorneys in the case justify enhanced fees for all counsel. This court has not yet addressed whether mere exigency surrounding litigation is sufficient to warrant enhanced attorneys' fees under the EAJA. The D.C. Circuit, however, has concluded that even where the government creates an artificial emergency or where an appeal is expedited, this consider-

1990)); *see also Former Employees of BMC Software, Inc. v. U.S. Sec'y of Labor*, 519 F. Supp. 2d 1291, 1346-53 (Ct. Int'l Trade 2007) (providing an overview of the divergent interpretations of "special factor" across the circuits). We do not believe it necessary to decide whether *Pierce* applies only to purely technical areas outside of the law that require something akin to separate credentials, but we do require that counsel demonstrate some practice specialty needful to the litigation. *Love*, 924 F.2d at 1496; *Pirus*, 869 F.2d at 541; *accord Atl. Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 491 (1st Cir. 2000). Nevertheless, recognizing a single companion case as a basis for distinctive knowledge would further widen this split.

ation is "insufficient" under the logic of *Pierce* to support a statutory cap increase. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004).

[7] We agree with the reasoning of *Role Models America* and hold that the exigency reflected in the record of this case is an insufficient basis to find a "special factor." "Producing high-quality work on a short deadline hardly satisfies th[e] standard" in *Pierce* of "work requiring specialized skills or knowledge beyond what lawyers use on a regular basis." *Role Models Am.*, 353 F.3d at 969. We intend no denigration of the performance of counsel under time-sensitive and stressful conditions, including that of Irell's junior attorneys in this case, but the work that was done here is similar to the "work and ability of counsel" and "results obtained" that were rejected as insufficient in *Pierce*. 487 U.S. at 573. We also note that the Irell junior attorneys were aided by NRDC co-counsel who specialize in public interest environmental litigation and who had one month of pre-filing preparation. That junior counsel from Irell were able to work so quickly and ably speaks to their general litigation skills and competence. It is not, however, sufficient to qualify for an enhanced fee award under the EAJA.

[8] In rejecting the district court's decision to award enhanced fees to the junior Irell attorneys, we are mindful that facing a team of seventeen government attorneys is a daunting task. However, we have previously held that "oppos[ing] the enormous resources of the federal government adds nothing" to our analysis because this disincentive to file suit is the very reason that the EAJA awards fees to a prevailing party. *Animal Lovers*, 867 F.2d at 1227 (internal quotation marks and citation omitted). Plaintiffs are not entitled to convert the very rationale for awarding fees in the first instance into a reason for awarding enhanced fees in their particular case. We thus agree with the Navy that the junior Irell attorneys were not entitled to enhanced fees and we reverse the district court's decision to the contrary.

### b. Irell's Senior Partner

**[9]** We conclude that the district court did not abuse its discretion in finding that the senior Irell attorney had the requisite degree of specialized experience required under *Pierce*. The district court noted that the senior partner had previous experience in a 1994 case involving similar environmental law issues and possible damage to marine mammals resulting from loud noises. While a finding of specialized experience cannot, as previously noted, be based merely on counsel's work on the virtually contemporaneous companion case, we think the district court's determination that this earlier, additional litigation constituted sufficient prior experience to justify an enhanced fee award was reasonable.

### c. The NRDC Junior Attorneys

**[10]** We similarly decline to disturb the district court's finding that the NRDC attorneys had the requisite "practice specialty" for an enhanced fee award. The declarations and resumes submitted by NRDC adequately establish that all the NRDC attorneys, including the two junior attorneys, had developed extensive knowledge in environmental law, and specifically in the effects of sonar on marine mammals. The two junior NRDC attorneys have co-authored journal articles and spoken at several national and international fora on the impact of noise on marine mammals, as well as served on a variety of committees addressing this distinct issue.[3]

---

[3]One NRDC junior attorney has graduated from law school, but has not passed the bar. He currently serves as a full-time consultant for NRDC. The Supreme Court has held that fees for paralegals are compensated as a component of attorneys' fees. *Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2013 (2008). By extension, this attorney may also recover fees for his legal work, and he has reasonably requested lower rates than an attorney of the same seniority who has passed the bar.

## 2. Whether Distinctive Skills Were Needful to the Litigation

Under *Love*, Plaintiffs must also show that counsel's distinctive knowledge and skills were "needful to the litigation" in order to justify fees above the statutory cap. *Love*, 924 F.2d at 1496. In considering whether Plaintiffs have met this standard, we note at the outset that this case involved more than a straightforward application of the APA and the NEPA. *Cf. Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) (denying enhanced fees for an immigration attorney specializing in asylum law because the case at issue involved merely a straightforward application of immigration law). To adequately craft the complaint and negotiate a settlement agreement under the circumstances of this case, counsel's knowledge of the Navy's exercises in RIMPAC and the effect of sonar on marine mammals was necessary. *See Love*, 924 F.2d at 1496 (attorney's knowledge of the Federal Insecticide, Fungicide and Rodenticide Act as well as familiarity with areas of expert testimony necessary to obtain a preliminary injunction on a short timeframe constituted distinctive knowledge needful for litigation). In addition, the billing records indicate that the junior NRDC attorneys worked both on preparing the expert declarations and on possible mitigation measures.

**[11]** On these facts, and in light of the district court's intimate knowledge of the litigation and each attorney's participation, we hold that the district court acted within its discretion in finding that the distinctive skills of NRDC's attorneys and the Irell senior partner were needful to the litigation.

## 3. Availability of Other Counsel

**[12]** The Navy further argues that even if Plaintiffs' counsel contributed distinctive skills needful to the litigation, they have not met their burden of showing that no other suitable

counsel could be obtained at the statutory rate. The Navy correctly asserts that the burden rests on Plaintiffs to demonstrate their entitlement to higher fees. Because the district court did not place the burden on Plaintiffs, its decision must be vacated and remanded for consideration consistent with this opinion.

The district court found that "there is no evidence that [attorneys with the necessary skills and knowledge] were available elsewhere at the statutory rate," and on the basis of this finding concluded that Plaintiffs were entitled to a fee award at the enhanced rate. Such a finding represents an error of law. The burden of providing evidence that appropriate counsel cannot be found at the statutory rate rests on the plaintiff. *United States v. 22249 Dolorosa St.*, 190 F.3d 977, 985 (9th Cir. 1999). In other words, the plaintiff must show that the skills required are not available elsewhere at the statutory rate; a mere absence of evidence to the contrary is insufficient.

To summarize, we remand this case to the district court for reconsideration consistent with this opinion to determine whether the Plaintiffs have met their burden of proof under the third prong of *Love*. If not, the district court should recalculate fees for the Plaintiffs as required. On remand, the district court should also recalculate fees for the junior Irell attorneys at the statutory rate, plus a cost of living increase.

## B.   Limited Success

The Navy also argues that though Plaintiffs were the prevailing party, they achieved only limited success, which required the district court to reduce the number of hours for which fees were awarded. With regard to this issue, we find that the district court did not abuse its discretion in finding for the Plaintiffs.

[13] In *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983), the Court held that "the extent of a plaintiff's success is a crucial

factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." Thus,

> [w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* However, the fact that a settlement agreement does not encompass all relief requested in the complaint does not preclude a finding that a plaintiff has nevertheless obtained an "excellent result." *Sorenson*, 239 F.3d at 1147. " 'Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.' " *Id*. (quoting *Hensley*, 461 U.S. at 435). We apply the analysis from *Hensley* to EAJA fee awards. *Sorenson*, 239 F.3d at 1145 n.2.

In their complaint, Plaintiffs sought (1) a declaration that the Navy was in violation of NEPA and MMPA; (2) vacatur of NMFS's Incidental Harassment Authorization and Finding of No Significant Impact; (3) an injunction against the use of mid-frequency active sonar during the RIMPAC exercises unless the Navy complied with MMPA, NEPA, and APA; and (4) an order directing the Navy to comply with NEPA and MMPA in RIMPAC 2006 and future RIMPAC exercises. According to the Navy, Plaintiffs obtained in a last-minute settlement only a four-day TRO based on the NEPA claim and a "modest settlement agreement that had little impact on the Navy's activities." The Navy also argues that the district court did not address the Navy's argument regarding its claim of limited success in its order awarding fees.

We find these arguments unpersuasive. Though Plaintiffs initially sought injunctive relief under both NEPA and MMPA prior to the invocation of the MMPA exemption, the

goal of the litigation (as articulated by NRDC) was "to ensure that RIMPAC 2006 would not be conducted absent the Navy's adoption of significant additional measures to protect marine life from the harm caused by exposure to high-intensity mid-frequency military sonar." In other words, Plaintiffs sought to compel the Navy to adopt mitigation measures beyond those in the Incidental Harassment Authorization.

Although Plaintiffs' complaint contained a number of alleged causes of action, the two statutory claims "involve[d] a common core of facts" and were "based on related legal theories," *Hensley*, 461 U.S. at 435. Specifically, Plaintiffs' entire litigation strategy was aimed at obtaining injunctive relief to force a change in the Navy's position. Thus, the district court properly "focus[ed] on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

**[14]** Where the relief sought is not monetary but injunctive relief pursued in the public interest resulting in a settlement, the "extent of success" cannot easily be measured. We note that Plaintiffs' litigation goal was not to ground the Navy's training exercises nor to impose such extreme mitigation measures as to effectively do so. The "excellent result" here was the attainment of the TRO, which forced the Navy to settle so it could proceed with its scheduled exercises. As the district court stated, the "settlement advanced Plaintiffs' goals in bringing the suit and was not a 'gratuitous act' on the part of the Navy." In adopting mitigation measures, the Navy substantially changed its position by agreeing to implement or modify several mitigation measures it had previously rejected. Moreover, this was the first time the Navy had agreed to additional mitigation measures for use during mid-frequency sonar exercises, a major victory for Plaintiffs.

The Navy further argues that the district court abused its discretion by failing to address its argument that Plaintiffs

enjoyed only limited success. It correctly argues that in determining the fee award, "when confronted with an objection on the basis of the limited nature of relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Cummings v. Connell*, 402 F.3d 936, 947 (9th Cir. 2005) (internal quotation marks and citations omitted).

However, our review of the district court's order leads us to conclude that the court adequately considered the relationship between the relief obtained and the fee award. The district court recognized that the successful TRO application was a material factor in obtaining "a settlement that was agreeable to all involved, allowing defendants to proceed with the naval exercises so vital to our national security without causing undue or unnecessary harm to marine life." The court declined to award fees for hours it found did not " 'directly and substantially' contribute[ ] to the attainment of their litigation goals." Though it did not recite the magic words "excellent result" or "level of success," the order made clear that the district court viewed the successful TRO and resultant settlement as an "excellent result" for which fees were properly awarded.

**[15]** We therefore hold that the district court did not abuse its discretion in declining to reduce the fee award on the basis of purportedly limited success, and we also conclude that the court explained its decision to an extent adequate for appellate review.

## C.  Fees on Appeal

Finally, relying on Ninth Circuit Rules 39-1.6(a) and 39-1.8, and our decision in *Cummings*, 402 F.3d 936, the Navy challenges the award of attorneys' fees for work done on the appeal of the TRO, arguing that Plaintiffs should have filed for fees incurred on appeal in this court, not the district court.

Circuit Rule 39-1.6 stated in part, prior to a July 1, 2007 amendment:

> Absent a statutory provision to the contrary, a request for attorneys fees, including a request for attorneys fees and expenses in administrative agency adjudications under 28 U.S.C. § 2412(d)(3), shall be filed with the Clerk, with proof of service, within 14 days from the expiration of the period within which a petition for rehearing or suggestion for rehearing en banc may be filed. If a timely petition for rehearing or a suggestion for rehearing en banc is filed, a request for attorneys fees shall be filed within 14 days after the court's disposition of such petition or suggestion. The request must be filed separately from any cost bill.

Circuit Rule 39-1.8 allows parties to move to transfer attorneys' fee motions on appeal to the district court or pertinent administrative agency. In *Cummings*, we held that appellate fees requested pursuant to 42 U.S.C. § 1988 must be filed with the Clerk of the Ninth Circuit in the first instance, not with the district court. 402 F.3d at 947-48. *But see Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883 (9th Cir. 2005) (affirming an award of attorney's fees pursuant to 17 U.S.C. § 505 for work done on appeal).

**[16]** The EAJA, however, unlike the fee-shifting statutes — 42 U.S.C. § 1988 and 17 U.S.C. § 505 — states that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States *in any court* having jurisdiction of that action . . . ." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). The plain language of the statute indicates that the district court may properly award fees for *all* levels of litigation. *See also Jean*, 496 U.S. at 159 (noting that "[s]ubsection (d)(1)(A) refers to an award of fees 'in any civil action' without reference to separate parts of the

litigation such as discovery requests, fees, or appeals"). "[T]o the extent that Ninth Circuit Rule 39-1.6 is inconsistent with the EAJA, the Circuit Rule is inapplicable, and the EAJA controls." *Al-Harbi v. I.N.S*, 284 F.3d 1080, 1082 (9th Cir. 2002); *accord* Ninth Circuit Rule 39-1.6 ("*Absent a statutory provision to the contrary* [timing and filing provisions apply]"(emphasis added)).

**[17]** Similar to the appellate fees affirmed in *Twentieth Century Fox*, these fees were " 'incurred for services that contribute[d] to the ultimate victory in the lawsuit' " as they were incurred in defense of Plaintiffs' TRO and the fees were thus properly awarded. 429 F.3d at 884 (quoting *Cabrales*, 935 F.2d at 1052). We therefore hold that Plaintiffs' application for attorneys' fees for the appeal of the TRO was properly filed in the district court where final judgment was entered.

## CONCLUSION

For the foregoing reasons, we affirm the district court's findings with regard to the success of Plaintiffs and the right of the district court to rule on the Plaintiffs' application for attorney fees on the appeal of the TRO. However, we VACATE the district court's order and REMAND for further fact finding and fee determinations consistent with this opinion.

AFFIRMED IN PART, and VACATED and REMANDED IN PART.

Each party shall bear its own costs.