**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEIL WINTERROWD; KEVIN YURKUS;
GREGORY STOPP,
   *Plaintiffs-Appellants,*

v.

AMERICAN GENERAL ANNUITY
INSURANCE CO., a Texas
Corporation; PATRICK GRADY;
DOES, 1-10 inclusive; THE
WESTERN NATIONAL CORPORATION
JOB SECURITY PLAN,
   *Defendants-Appellees.*

No. 07-56541

D.C. No.
CV-00-00677-CAS-
RC

NEIL WINTERROWD; KEVIN YURKUS;
GREGORY STOPP,
   *Plaintiffs-Appellees,*

v.

AMERICAN GENERAL ANNUITY
INSURANCE CO., a Texas
Corporation; PATRICK GRADY; THE
WESTERN NATIONAL CORPORATION
JOB SECURITY PLAN,
   *Defendants-Appellants.*

No. 07-56711

D.C. No.
CV-00-00677-CAS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
November 18, 2008—Pasadena, California

1859

Filed February 17, 2009

Before: Pamela Ann Rymer and Milan D. Smith, Jr.,
Circuit Judges, and Edward R. Korman,* District Judge.

Opinion by Judge Milan D. Smith, Jr.
Partial Concurrence and Partial Dissent by Judge Rymer

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

## COUNSEL

William G. Wheatley, Jr., Law Offices of William G. Wheatley, Jr., Del Mar, California, William G. Wheatley, Sr. (argued), Jaqua & Wheatley, Eugene, Oregon, for the plaintiffs-appellants.

Catherine A. Conway, Rex S. Heinke (argued), Jessica M. Weisel, Akin Gump Strauss Hauer & Feld LLP, Los Angeles, California, for the defendants-appellees.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

We consider in this appeal whether the Plaintiffs can recover attorney's fees generated by a distinguished member of the Oregon Bar who assists a member of the California Bar in litigating a case before the federal district court in the Central District of California (Central District), but who (a) is not a member of the California Bar, (b) does not physically appear before the Central District, (c) does not sign pleadings in the case before the Central District, (d) has minimal contact with his clients, and no direct contact with opposing counsel in the case, (e) is supervised by Wheatley, Jr., an attorney who is licensed to practice law in California and is the person who alone remained responsible to the Plaintiffs, and (f) is not admitted *pro hac vice* in connection with the case before the Central District, but no evidence in the record shows that he would not have routinely been so admitted had he applied. We hold that the Plaintiffs can recover such fees. With respect to this issue, we reverse and remand, and with respect to the other issues addressed in this opinion, we affirm in part, and remand in part.

## Factual and Procedural Background

This is the third time this court has heard an appeal related to this matter in almost nine years of litigation. Appellants

Neil Winterrowd, Kevin Yurkus, and Gregory Stopp (Winterrowd plaintiffs) filed their initial and amended complaints in early 2000, asserting claims for breach of a severance contract. American General Annuity Insurance Co., et al. (AGAIC) asserted in its answer that the Winterrowd plaintiffs' contract claims were preempted by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*

The district court granted AGAIC's motion for summary judgment, holding that the severance contract issued to the Winterrowd plaintiffs was an employee benefit plan covered under ERISA. The Winterrowd plaintiffs appealed, and on March 5, 2003, this court reversed the district court's grant of summary judgment, finding that ERISA did not apply, and remanded the case for further consideration of the Winterrowd plaintiffs' breach of contract claims.

After remand, the Winterrowd plaintiffs moved the district court for an entry of summary judgment on their breach of contract claims. The district court denied that motion because it found that a material dispute of fact remained respecting AGAIC's unilateral mistake affirmative defense. Ten months later, the parties entered into a settlement agreement under which AGAIC agreed to pay the entire amount claimed by the Winterrowd plaintiffs, plus interest, totaling $288,240.56. The settlement agreement provided for the payment of all costs except for those incurred in connection with the appeal. With regard to attorney's fees, the settlement agreement stated:

> The parties agree to preserve the issue of attorneys' fees, if any, for a noticed motion to be decided by District Court Judge Christine Snyder. . . . The Court shall decide the issue of attorney's fees based on the law, evidence submitted by affidavits (with either party reserving the right to object) and the submitted briefs. Each party retains the right to appeal the award or denial of attorneys' fees.

The Winterrowd plaintiffs also agreed "to prepare a dismissal with prejudice of the entire action and provide it to Defendants' counsel. Defendants agree not to file the Dismissal until their receipt of the Court's final decision on the issue of attorney's fees."

The Winterrowd plaintiffs next filed a motion for attorney's fees pursuant to § 218.5 of the California Labor Code, as well as a motion for sanctions against AGAIC's counsel. In an order dated October 20, 2004, the district court held that the Winterrowd plaintiffs were owed attorney's fees as a matter of law "[i]n light of the Ninth Circuit's decision that plaintiffs' original claim was not preempted by ERISA and the fact that defendant ultimately agreed to pay plaintiffs one hundred percent of their contract claims." The district court applied California law to determine a reasonable hourly rate for the Winterrowd plaintiffs' attorneys, finding that $300 per hour was an appropriate rate for their counsel of record, William Wheatley Jr., and for Robert Wheatley. The district court also granted fees for the Winterrowd plaintiffs' three unsuccessful motions for summary judgment. The district court denied the Winterrowd plaintiffs' request for sanctions against AGAIC's counsel.

The district court determined that William Wheatley, Sr., an attorney admitted to the Oregon Bar but not the California Bar, could not recover attorney's fees for the work he did while the case was before the district court. The court found that because Wheatley, Sr.'s "work on this case dealt with matters of California law for a California client's claim in the Central District of California, he is not entitled to recover for fees that were rendered in violation of the State Bar Act or the Central District Local Rules." Wheatley, Sr., was, however, admitted to the Ninth Circuit Bar, and the court granted the Winterrowd plaintiffs fees for the time Wheatley, Sr. spent on the 2002-03 appeal before this court.

On February 22, 2005, the district court granted the Winterrowd plaintiffs' motion for an entry of judgment, "dismissing

this action, pursuant to the terms of the settlement agreement, and entering judgment awarding plaintiffs attorney's fees in the amount" established in the prior order. The Winterrowd plaintiffs timely appealed from this judgment on the issues of attorney's fees and sanctions. AGAIC cross-appealed. While that appeal was pending, on April 4, 2005, the district court denied a March 8, 2005 motion for unclaimed attorney's fees (seeking attorney's fees from August 27, 2004, the date that the original fees motion was filed, until March 7, 2005) stating that it "finds that it does not have jurisdiction to award any further attorneys' fees to plaintiffs by reason of the appeal."

On January 22, 2007, the Ninth Circuit Clerk's Office remanded the case to the district court because "the district court has neither entered a final judgment disposing of plaintiffs' underlying claims, nor certified the attorneys fee issue for interlocutory review pursuant to 28 U.S.C. § 1292(b) or Fed. R. Civ. P. 54(b)." On January 25, 2007, the district court issued an order certifying the case for appeal pursuant to 28 U.S.C. § 1292(b). On April 12, 2007, this court denied the Winterrowd plaintiffs' petition for permission to appeal pursuant to 28 U.S.C. § 1292(b). In response to the dismissal by our court, the district court dismissed the Winterrowd plaintiffs' underlying claims against AGAIC with prejudice on September 27, 2007. Once more, the Winterrowd plaintiffs timely appealed and AGAIC timely cross-appealed.

While these appeals were pending, the district court issued a minute order on November 7, 2007 denying the Winterrowd plaintiffs' motion for fees for work on this case between March 8, 2005 and October 11, 2007 "without prejudice to its being renewed after the Ninth Circuit renders a decision." On December 3, 2007, the Winterrowd plaintiffs amended their notice of appeal to include an appeal from this most recent minute order.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction under 28 U.S.C. § 1291, and reviews the amount of attorney's fees awarded by the district court for abuse of discretion. *Nat'l Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1157 (9th Cir. 2008). Nevertheless "any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable *de novo*." *Id.* (citation and internal quotation marks omitted). "We review for an abuse of discretion the district court's denial of a motion for sanctions." *Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114, 1117 (9th Cir. 2002).

## DISCUSSION

### Attorney's Fees for Wheatley, Sr.

Even at a time when the largest law firms in the United States were composed of not many more than one hundred lawyers, Judge Friendly observed that we live in an "age of increased specialization and high mobility of the bar." *Spanos v. Skouras*, 364 F.2d 161, 170 (2d Cir. 1966). But in 1966, there were no personal computers, no Internet, no Blackberries, no teleconferencing, no emails, and the only person who had a two-way wrist radio was cartoon character Dick Tracy. Today, largely because of the benefits of modern technology, hundreds of U.S.-based law firms are composed of many hundreds, or even thousands, of lawyers and support personnel contemporaneously doing business in many states and throughout the world. Lawyers throughout the United States regularly participate in teleconferences and group email sessions with other lawyers in other states, and lawyers and paralegals from one or more firms participate in massive discovery projects arising out of a single case concerning papers and data located in several states. In many such instances, only a small fraction of the lawyers involved in a case are members of the bar of the state where the presiding court sits. Current law does not compel us to be judicial Ludd-

ites, and we may properly accommodate many of the realities of modern law practice, while still securing to federal courts the ability to control and discipline those who practice before them.

The district court's order, dated October 21, 2004, determined that the Winterrowd plaintiffs were entitled to reasonable attorneys fee's under Cal. Lab Code § 218.5 as a matter of law. However, based on its reading of *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Ct. of Santa Clara County*, 17 Cal. 4th 119 (1998), the court held that the Winterrowd plaintiffs could not recover fees for the work of attorney Wheatley, Sr., due to his alleged violation of the "State Bar Act or the Central District Local Rules."

**[1]** Admissions rules and procedure for federal court are independent of those that govern admission to practice in state courts. *In re Poole*, 222 F. 3d 618, 620-22 (9th Cir. 2000) ("[A]s nearly a century of Supreme Court precedent makes clear, practice before federal courts is not governed by state court rules."); *see also Birbrower,* 17 Cal. 4th at 130 ("The [State Bar] Act does not regulate practice before United States courts."). This is true even "when admission to a federal court is predicated upon admission to the bar of the state court of last resort." *In re Poole,* 222 F.3d at 620.[1]

The Central District has predicated admission to its bar on admission to the State Bar of California, except for those permitted to appear *pro hac vice*. C.D. Cal. L.R. 83-2.2, 93-2.3.1. As already noted, however, *In re Poole* makes clear that the Central District's local rule does not mean that California

---

[1]Defendants argue that because *Birbrower* notes that the Central District of California conditions admission to their bar on active membership in good standing in the California State Bar, 17 Cal. 4th at 130, the California Supreme Court implied that the State Bar Act applied to attorneys practicing within the Central District. This is an overly expansive reading of *Birbrower*, and is contrary to this court's subsequent decision in *In re Poole*.

state court rules in any way govern practice in the federal court. *In re Poole,* 222 F.3d at 620. Since all litigation in this case took place in federal court, *Birbrower* is inapposite. The district court "inappropriate[ly] reli[ed] on state authority to impose federal discipline" on Wheatley, Sr. *In re Poole,* 222 F.3d at 622.[2]

Moreover, we do not read *Birbrower* as precluding the Winterrowd plaintiffs from obtaining an award of fees for the services Wheatley, Sr. The law firm in that case, a New York partnership, to whom we refer as Birbrower, entered into an agreement with a client in California to provide legal services in connection with a dispute there over a contract which by its terms was governed in every respect by the "internal laws of the State of California." *Birbrower,* 17 Cal. 4th at 125. Birbrower attorneys made repeated trips to California where they discussed matters relating to the legal dispute, provided legal advice, and made strategy recommendations. Birbrower attorneys also made trips to California to meet with the client and its accountants for the purpose of assisting in settlement of the dispute.

While the Supreme Court of California held that the foregoing conduct constituted the practice of law in California, even though the matter for which Birbrower was retained never proceeded to litigation, it went on to address an issue of first impression, namely, the meaning of the phrase practice of law "in California" which was proscribed by § 6125 of the California Business and Professional Code. In so doing, it observed:

> In our view, the practice of law "in California" entails sufficient contact with the California client to render the nature of the legal service a clear legal

---

[2]Defendant's, and the dissent's, reliance on *Z.A. v. San Bruno Park School District*, 165 F.3d 1273, 1276 (9th Cir. 1999) is also misplaced, as *Z.A.* involved fees that were incurred in a state administrative proceeding.

representation. In addition to a quantitative analysis, we must consider the nature of the unlicensed lawyer's activities in the state. Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law "in California." The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations.

*Birbrower,* 17 Cal. 4th at 128. The *Birbrower* Court then went on to explain that its definition "does not necessarily depend on or require the unlicensed lawyer's physical presence in the state." *Id.* Instead, it held that "[p]hysical presence here is one factor we may consider in deciding whether the unlicensed lawyer has violated section 6125, but it is by no means exclusive." *Id.* It then went on to provide the following example:

[O]ne may practice law in the state in violation of section 6125 although not physically present here by advising a California client on California law in connection with a California legal dispute by telephone, fax, computer, or other modern technological means. Conversely, although we decline to provide a comprehensive list of what activities constitute sufficient contact with the state, we do reject the notion that a person *automatically* practices law "in California" whenever that person practices California law anywhere, or "virtually" enters the state by telephone, fax, e-mail, or satellite.

*Id.* at 128-29 (emphasis in original).

Applying these guidelines to the facts in *Birbrower*, the Supreme Court of California held that Birbrower was not entitled to counsel fees because it "engaged in unauthorized law practice *in California* on more than a limited basis, and no firm attorney engaged in that practice was an active member

of the California State Bar." *Id.* at 131 (emphasis in original). Nevertheless, while Birbrower was denied legal fees for the work it did in California, it was permitted to recover for services performed in New York. *Id.* at 135-36.

The present case is clearly distinguishable from *Birbrower*. The activities of the Birbrower firm constituted the practice of law in California because it entered into a retainer agreement with a client in California to provide legal services there and its attorneys came to California for that purpose. By contrast, Wheatley, Sr. did not enter into a retainer agreement with the Winterrowd plaintiffs. Instead, the member of the California State Bar whom they retained entered into an agreement with Wheatley, Sr. to provide him with assistance in prosecuting an action against the defendants, who, as it happens, asserted a meritless defense under federal law, namely, ERISA preemption. Thus, the case turned more on that issue than any issue regarding California law. Moreover, the services at issue here were performed entirely in Oregon.

Perhaps of even more significance is that the arrangement between Wheatley, Sr. and the California lawyer who retained him is closely analogous to a partnership. Indeed, it was for all practical purposes a partnership for the purpose of prosecuting the case against AGAIC. *Birbrower* suggested that fees would have been awarded for the practice of law engaged in California by the out-of-state members of the firm if a "firm attorney engaged in that practice was an active member of the California State Bar." *Id.* at 131. More recently, in *Frye v. Tenderloin Housing Clinic, Inc.*, 38 Cal. 4th 23 (2006), the Supreme Court of California said that in *Birbrower,* "we concluded that an out-of-state law firm was not entitled to a judgment enforcing its client's obligations under a fee agreement for legal services rendered in California, because neither the firm *nor its lawyers* were authorized to practice law in California." *Id.* at 48-49 (emphasis in original). While we discuss the considerations of policy that would have justified a different outcome in *Birbrower*, if one of the members of the firm

was admitted in California, we think it clear that Wheatley, Sr. would be entitled to be compensated under California Labor Code § 218.5.

**[2]** Nevertheless, even if our view of California law is incorrect, the State Bar Act and *Birbrower* do not control.[3] Instead, we look to the Central District's rules as well as federal case law to determine whether Wheatley, Sr. was engaged in the unauthorized practice of law and whether the Winterrowd plaintiffs may recover attorney's fees for Wheatley, Sr's work. The Central District requires any person "who is a member of good standing of, and eligible to practice before, the bar of any United States Court, or of the highest court of any State . . . and who has been retained to appear before this Court, may, upon written application and in the discretion of the Court, be permitted to appear and participate *pro hac vice* in a particular case." C.D. Cal. L. R. 83-2.3.1.

Case law suggests two ways in which the Winterrowd plaintiffs could be able to recover fees for Wheatley, Sr.'s work. The first is if the attorney at issue would have certainly been permitted to appear *pro hac vice* as a matter of course had he or she applied. The leading circuit court case on this issue, *Spanos v. Skouras*, 364 F.2d 161, 168 (2d Cir. 1966) (en banc), permitted an out-of-state attorney to receive fees for work related to a case in federal court when it was certain he would have been admitted *pro hac vice* as a matter of course. In *Spanos*, a California attorney (Spanos) worked in

---

[3]The dissent believes that because California substantive law applies regarding the method of calculating of fees themself, the California State Bar Act should apply to out-of-state attorneys practicing in federal court. Dissent, at 1883-85. This cognitive leap is not supported by California caselaw. Indeed, *Birbrower* reaffirmed the rule that "the [Bar] Act does not regulate practice before United States Courts." *Birbrower*, 17 Cal. 4th at 130. Thus, if services rendered by an out-of-state attorney do not constitute the practice of law, as that term is construed under the applicable federal rule, then he is entitled to recover his fees. *Id.* We discuss this issue *infra*, page 1874-75.

the Southern District of New York, in conjunction with local lawyers, on an antitrust matter arising under federal law. *Id.* at 167-68. Spanos spent several years working on the case, but his client ultimately discharged him and refused to pay him a contractually agreed-upon contingency fee when the antitrust dispute settled. *Id.* at 163. Spanos sued for fee payment in the district court. On reconsideration en banc, the Second Circuit held that while Spanos had not sought admission to practice *pro hac vice* in the Southern District, "it 'cannot be seriously doubted that at any time on motion, the admission of Spanos *pro hac vice* would have been authorized' " by the district court. *Id.* at 168 (noting that Spanos was well trained and a member in good standing of the California Bar). California state courts have held similarly. *See Cowen v. Calabrese*, 230 Cal. App. 2d 870, 872 (1964) (indicating that an Illinois attorney was able to collect fees when it "appear[ed] certain" that the lawyer would have been admitted to practice before the federal court "as a matter of comity").

Here, the record shows that Wheatley, Sr. is a member in good standing of the Oregon State Bar, has forty-five years of civil trial and appellate experience, served as President of the Oregon State Bar in 1993-94, is a fellow of the American College of Trial Lawyers, and has been listed in *The Best Lawyers in America* since 1977. As in *Spanos*, there has been "no suggestion of any unlawyerlike conduct on his part." 364 F.2d at 168. Nor do Defendants-Appellees offer any reasons why Wheatley, Sr. would not have been admitted *pro hac vice*. Although this information leads us to believe he would have most likely been admitted *pro hac vice*, the Central District has noted situations which disqualify otherwise qualified attorneys from *pro hac vice* admission, such as when an attorney "(a) Resides in California; or (b) Is regularly employed in California; or (c) Is regularly engaged in business, professional, or other similar activities in California." C.D. Cal. L.

R. 83-2.3.2 Because the record has not been developed as to these facts, we decline to rest our reasoning upon *Spanos*.[4]

[3] The Winterrowd plaintiffs can still recover fees for Wheatley, Sr.'s work, however, because his conduct did not rise to the level of "appearing" before the district court. This court has permitted fee recovery for the work of paralegals, database managers, legal support, summer associates, and even attorneys who have yet to pass the bar. *Nat'l Res. Def. Council, Inc. v. Winter,* 543 F.3d 1152 (9th Cir. 2008). These participants in the legal process do not "appear" before the district court, as they do not argue cases or sign briefs. They are nevertheless an integral part of the litigation process.

[4] Wheatley, Sr.'s role was similar to such litigation support or consultants, and distinguishable from an "appearance." *See United States v. Wunsch*, 84 F.3d 1110, 1115 (9th Cir. 1996) (holding that an attorney had "appeared" when he identified himself as counsel in the court's appearance form, physically came into court, signed pleadings, and identified himself as counsel to opposing counsel). Wheatley, Sr. never appeared or argued in front of the district court, nor did he sign briefs. He had the role of advising his son and reviewing pleadings, which he did with minimal, nonexclusive contact with the client and no communication with opposing counsel. Moreover, Wheatley, Sr. did not even physically enter the State of California in connection with the prosecution of this case.

[5] We find the reasoning of *Dietrich Corp. v. King Resources, Co.*, 596 F.2d 422 (10th Cir. 1979) persuasive on this point. In *Dietrich*, an attorney who was not licensed in Colorado acted as a consultant in a large securities litigation

---

[4]We do note, however, that if the record indicated a reason why Wheatley, Sr. would *not* have been admitted *pro hac vice* (such a bar suspension or unlawyerlike conduct), we could end our inquiry here and refuse to allow the Winterrowd plaintiffs to collect fees for his work.

case. In determining whether he should be able to collect fees for his work, the court reasoned:

> Is what he did, providing services in the field of his legal expertise to or through established law firms, with no court appearances as an attorney, the practice of law in Colorado? The cases and ethics opinions we have seen involved either court appearances as counsel for private clients or the rendering of legal services directly to a client. . . . Law firms have always hired unlicensed student law clerks, paralegals and persons who have not completed their legal education but are awaiting admission to the bar. . . . No one has treated this activity as the unauthorized practice of law, because the licensed attorneys alone remain responsible to the clients, there are no court appearances as attorney, and no holding out of the unlicensed person as an Independent giver of legal advice.

*Id.* at 426 (*citing Spanos,* 364 F.2d at 169). The court held that the out-of-state attorney should be "treated as a lawyer whose services in the instant case did not constitute the unauthorized practice of law," and that he could recover fees. *Id.* The court emphasized that its holding should be limited to instances where the unlicensed attorney's work is filtered through a licensed in-state attorney, who is admitted to the local court and subject to its discipline. *Id.* This is the case here as well, where Wheatley, Sr.'s work was at all times filtered through Wheatley, Jr., who was admitted to the Central District and subject to its discipline.

In an effort to avoid the compelling force of the holding in *Dietrich,* our dissenting colleague argues that "*Dietrich* involved the practice of law, and rules of professional responsibility, in Colorado," and that "the Tenth Circuit posed the question and gave its answer, with respect to the practice of law *in Colorado*." Dissent, at 1891. We do not read *Dietrich*

in so restrictive a manner. While the attorney seeking fees was not admitted to practice in Colorado, the Tenth Circuit did not cite a single Colorado case or any rule of professional responsibility specific to Colorado. The only case it did cite was Judge Friendly's opinion for the Second Circuit in *Spanos*. *Dietrich,* 596 F.2d at 426.

Moreover, the ethical rule which it found persuasive was an opinion of the ABA Committee on Professional Ethics, obviously not limited to Colorado. *Id.* The opinion addressed the issue of the practice of law by partnerships when not all lawyers were admitted to practice in the same state. In a portion of the ethical rule which the Tenth Circuit found particularly relevant, the ABA Committee observed that "there are no ethical barriers to carrying on the practice by such a firm in each state so long as the particular person admitted in that state is the person who, on behalf of the firm, *vouched for the work of all of the others and, with the client and in the courts, did the legal acts defined by that state as the practice of law . . . .* The important requirement in this respect is simply that the local man must be admitted in the state and *must have the ability to make, and be responsible for making, decisions for the lawyer group.*" *Id.* (citing ABA Comm. on Prof'l Ethics Opinions, No. 316 (1967)) (emphasis in original).

While *Dietrich* did not arise in the context of a firm partnership, the Tenth Circuit concluded that its rationale applied equally to the attorney seeking fees there because, as was the case in both *Spanos* and the ABA Opinion, "an individual trained in the law act[ed] as a filter between the unlicensed person . . . and the lay client, adding and exercising independent professional judgment, and, importantly, is an officer of the local court subject to its discipline." *Id.* This holding, as we observed earlier, is consistent with California law. *See Birbrower*, 17 Cal. 4th at 131; *Frye*, 38 Cal. 4th 23.

The dissenting opinion also suggests that Dietrich is not persuasive because it "involved a fee splitting agreement, not

a fee-shifting statute which is at issue in our case." Dissent, at 1891. While we are not certain which way this distinction cuts, *see Frye*, 38 Cal. 4th at 49, it ignores the fact that the central issue in *Dietrich* turned on what constituted the practice of law. *Dietrich*, 596 F.2d at 426. Because it concluded that the conduct of the attorney there did not constitute the practice of law, the Court of Appeals held that he was entitled to legal fees. *Id.* This is precisely the issue we address in this case.

[6] We hold that because Wheatley, Sr., a non-member of the California Bar, did not physically appear before the Central District, did not sign pleadings in the case before the Central District, had minimal, nonexclusive contacts with the Winterrowd plaintiffs, that Wheatley, Jr., who was licensed to practice law in California, was the person who alone remained responsible to the plaintiffs, and that Wheatley, Sr. did not render legal services directly to the plaintiffs, the Winterrowd plaintiffs may recover attorney's fees for his work in the case prosecuted before the district court in the Central District.[5]

---

[5]There is evidence that the California state courts would view the case this way. In 2004, California Rule of Court 966 (which has since been renumbered as 9.47) was enacted, which permits out of state attorneys to practice law in California when they:

> (1) Maintain an office in a United States jurisdiction other than California and in which the attorney is licensed to practice law; (2) Already be retained by a client in the matter for which the attorney is providing legal services in California, except that the attorney may provide legal advice to a potential client, at the potential client's request, to assist the client in deciding whether to retain the attorney; (3) Indicate on any Web site or other advertisement that is accessible in California either that the attorney is not a member of the State Bar of California or that the attorney is admitted to practice law only in the states listed; and (4) Be an active member in good standing of the bar of a United States state, jurisdiction, possession, territory, or dependency.

Although not completely analogous to this case, it is an indication that the state court system is moving towards being more amenable to a multi-jurisdictional practice.

Our holding does not adversely impact the very important role *pro hac vice* admissions play in our federal court system. An out of state attorney must still apply for *pro hac vice* admission if that attorney appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel. Moreover, an attorney may not receive attorney's fees under the holding in this case if there is evidence he did not meet the legal qualifications to be admitted *pro hac vice* to the bar of the relevant court had he applied; thus, disbarred, suspended or otherwise unqualified attorneys may not be the beneficiaries of the holding in this case. Although we agree with the dissent that "there is a reason behind" the *pro hac vice* rule, we need not apply the rule in a draconian fashion when the attorney has not "appeared" in front of the court, thus denying the Winterrowd plaintiffs their statutory right to recover fees.

## Plaintiffs' Request for Sanctions

The Winterrowd plaintiffs claim that the district court abused its discretion by failing to make findings of fact with respect to their request for sua sponte sanctions under Rule 11, Rule 56(g), and the district court's "inherent authority" to impose sanctions. The basis for the Winterrowd plaintiffs' requests for sanctions is AGAIC's pursuit of various ERISA theories at the outset of the litigation, and the discrepancy between a declaration and deposition testimony, which they believe is evidence of bad faith conduct.

**[7]** The Winterrowd plaintiffs' request for Rule 11 sanctions was procedurally defective. A Rule 11 motion for sanctions must be served on opposing counsel twenty-one days before filing the motion with the court, providing the opposing counsel a "safe harbor . . . to give the offending party the opportunity . . . to withdraw the offending pleading *and thereby escape sanctions*." *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998); *see also* Fed. R. Civ. P. 11(c)(2). Failure to provide the required notice precludes an award of Rule 11

sanctions upon Wintterrowd's motion. *Barber*, 146 F.3d at 710 (holding that "[a]n award of [Rule 11] sanctions cannot be upheld" where party seeking sanctions did not provide twenty-one day notice period). Thus the district court was correct as a matter of law that there was "no basis" for awarding Rule 11 sanctions.

**[8]** The district court also did not abuse its discretion by failing to make specific findings to support its denial of the request for sanctions under Rule 56(g) and under the court's "inherent authority." A district court does not as a matter of law abuse its discretion by summarily denying a request for sanctions without making specific findings of facts. *Air Separation, Inc. v. Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995). The district court's summary denial of the sanctions motion necessarily implies that it found no bad faith, and we affirm this finding.

### Calculation of a Reasonable Hourly Rate

The Winterrowd plaintiffs argue that the district court erred in its calculation of the reasonable hourly rate for Wheatley, Jr. Winterrowd paintiffs argue that under California law, the hourly rate determination must be made according to the "market rate" — the rate typically charged by "private attorneys in the community conducting non-contingent litigation of the same type" — and the district court erred by ignoring the evidence presented with respect to the market rate and instead improperly considering evidence related to the "customary rate" that Wheatley, Jr. ordinarily charges clients.

The California Supreme Court has repeatedly confirmed the discretion of the trial court in determining appropriate fee awards: "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong' — meaning that it abused its discretion." *PLCM Grp.*

*v. Drexler*, 997 P.2d 511, 518 (Cal. 2000) (citing *Serrano v. Priest*, 20 Cal 3d. 25, 49 (1977); *Fed-Mart Corp. v. Pell Enter., Inc.*, 111 Cal. App. 3d 215, 228 (1980)).

**[9]** The district court's setting of Wheatley, Jr.'s reasonable hourly rate at $300 was well-supported by the evidence produced on market rates. The Winterrowd plaintiffs' own expert indicated that the range for associate salaries of comparable experience to Wheatley, Jr. was $200-$435 per hour. The district court's $300 per hour rate is in line with the range suggested by the declarations, and therefore the district court did not abuse its discretion in making the factual determination of Wheatley, Jr.'s reasonable rate.

## Request for Post-Judgment Attorney's Fees

The Winterrowd plaintiffs argue that the district court erred in dismissing their Rule 54 motion for "post-judgment" fees in the April 4, 2005 and November 7, 2007 orders. On review of these orders, it is clear that the district court has yet to rule on the issue of post-judgment fees. Remand is appropriate on the issue of what, if any, fees should be awarded for the period between August 27, 2004 to October 11, 2007.

## Insufficiently Documented Fee Claims

AGAIC argues in its cross-appeal that the district court abused its discretion in failing to strike fee claims by Wheatley, Jr. and Robert Wheatley that were "vague or insufficiently documented."

State law establishes the required showing for attorney's fees in an action in diversity. *See Kern Oil & Refinding Co. V. Tenneco Oil Co.*, 792 F.2d 1380, 1388-89 (applying standards under Texas law for setting fee award). Under California law, "[t]o enable the trial court to determine whether attorney fees should be awarded and in what amount, an attorney should present '(1) evidence, documentary and oral, of

the services actually performed; and (2) expert opinion, by [the applicant] and other lawyers, as to what would be a reasonable fee for such services.' " *Martino v. Denevi*, 182 Cal. App. 3d 553, 558 (1986) (citations omitted). While "[s]ome federal courts require that an attorney maintain and submit 'contemporaneous, complete and standardized time records' . . . . , [i]n California, an attorney need not submit contemporaneous time records in order to recover attorney fees." *Id.* at 559. "Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." *Id.*

[10] As Wheatley, Jr. and Robert Wheatley met the requirements under California law of showing "evidence, documentary and oral, of the services actually performed," the district court did not abuse its discretion by finding that the evidence the Winterrowd plaintiffs submitted was sufficient for the court to determine the plaintiffs' reasonable fees.

## Reasonableness of Fees for Failed Motions

AGAIC argues on cross-appeal that the district court erred by failing to require the Winterrowd plaintiffs to show the reasonableness of three failed motions for summary judgment before awarding fees for time spent on those motions.

Under California law, "[i]t is only when a plaintiff has achieved limited success or has failed with respect to distinct and unrelated claims, that a reduction from the lodestar is appropriate." *Hogar v. Community Dev. Com. of Escondido*, 157 Cal. App. 4th 1358, 1369 (2007) (citation omitted). "However, where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his [or her] attorney's fee reduced simply because the [trial] court did not adopt each contention raised." *Id.* (citations omitted). The party seeking fees is not required to show the reasonableness of every failed claim.

Here, the record provides adequate support for the district court's conclusion that the failed motions were reasonable and compensable. The first summary judgment motion sought recovery for breach of contract but was denied on the ERISA preemption grounds, a theory overruled by this court on appeal. Likewise, the motion for reconsideration was also denied on grounds of ERISA preemption. After our reversal and remand on the ERISA issue, the motion for an entry of judgment was the first time the district court had addressed the breach of contract issue on the merits.

**[11]** AGAIC does not contest the district court's finding that the Winterrowd plaintiffs "ultimately attained one-hundred percent of the recovery they sought, despite defendant's opposition at every stage." Moreover, this was the precise recovery that Winterrowd sought through the contract claims he advanced in the three motions. The failed motions appear reasonably related to the ultimate victory, and the district court did not abuse its discretion by not requiring the plaintiffs to prove reasonableness nor in allowing fees for these motions.

**Request for Sanctions under FRAP 38**

**[12]** Finally, we must address the Winterrowd plaintiffs' request for sanctions against AGAIC under Federal Rule of Appellate Procedure 38. AGAIC contends that this request is procedurally defective because Rule 38 requires a separate motion for fees. "A request made in an appellate brief does not satisfy Rule 38" and must be denied. *See Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 709 (9th Cir. 2004). Further, it is clear to us that AGAIC's arguments on its cross-appeal do not merit sanctions. "An appeal is considered frivolous when the result is obvious or the appellant's arguments of error are wholly without merit." *Operat. Eng. Pension Trust v. Cecil Backhoe Svc.*, 795 F.2d 1501, 1508 (9th Cir. 1986)(citation omitted). The Winterrowd plaintiffs' request for sanctions is denied with prejudice.

**Conclusion**

We AFFIRM the October 20, 2004 order of the district court in all respects except for the denial of fees for Wheatley, Sr.'s work. We REVERSE and REMAND this case to the district court for determination of the amount due to the Winterrowd plaintiffs for Wheatley, Sr.'s work on the district court portion of this case, and we REMAND to the district court for a determination in the first instance of what, if any, attorney's fees are owed to the Winterrowd plaintiffs for the period from August 27, 2004 to October 11, 2007.

Each party shall bear its own costs on appeal.

AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART

---

RYMER, Circuit Judge, concurring in part, dissenting in part:

I part company because I cannot agree with the majority's take on why an experienced attorney such as William Wheatley, Sr., who provided substantial legal advice in aid of Winterrowd's action in California yet is not admitted to practice in the State of California or in the Central District of California, is nevertheless entitled to attorney's fees under § 218.5 of the California Labor Code.[1] I am unaware of any authority construing § 218.5 to allow recovery of attorney's fees for the work of a non-admitted attorney — or "consultant" — in these circumstances.

California substantive law determines the availability and

---

[1]California Labor Code § 218.5 provides that "[i]n any action for nonpayment of wages . . . the court shall award reasonable attorney's fees and costs to the prevailing party if the party to the action requests attorney's fees and costs upon the initiation of the action."

amount of attorney's fees in this diversity case. *Mangold v. California Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). *Birbrower, Montalbano, Condon, & Frank v. Superior Court* is the leading California authority on whether a non-admitted, out-of-state attorney may recover attorney's fees for work on California legal matters. 949 P.2d 1 (Cal. 1998). The general rule is that "[n]o one may recover compensation for services as an attorney at law in this state unless [the person] was at the time the services were performed a member of The State Bar." *Id.* at 5 (quoting *Hardy v. San Fernando Valley Cham. of Comm.*, 99 Cal.App.2d 572, 576 (1950)). *Birbrower* recognizes exceptions,[2] including that the state cannot regulate practice before a federal court — in this case, the United States District Court for the Central District of California.[3] But Wheatley, Sr. never fulfilled the requirements for practice before the Central District, either. Only attorneys who are active members in good standing of the State Bar of California, or those who are permitted to appear *pro hac vice,* may appear and participate in a particular case in the Central District of California.[4] An attorney such as Wheatley, Sr., who is

---

[2]The recognized exceptions are brief, consensual appearances before a state court or tribunal, permission to appear *pro hac vice*, practice before the United States courts, certificates allowing foreign legal consultants to advise on the law of the foreign jurisdiction where they are admitted, and representing parties in arbitration or conciliation of certain international commercial disputes. *Id.* at 6-7.

[3]*Birbrower*, 949 P.2d at 6; *Cowen v. Calabrese*, 230 Cal.App.2d 870, 872 (1964). *In re Poole*, upon which the majority relies, is to the same effect. It holds that "[a]dmission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges." 222 F.3d 618, 620 (9th Cir. 2000). However, *Poole* does not speak to the question in this case, which is whether an out-of-state attorney who is not admitted by either the state or the federal district court is entitled to fees under a California fee-shifting statute.

[4]The Central District's Local Rule 83-2.3 governs *pro hac vice* appearance. Section 83-2.3.1 provides:

> *Permission to Appear Pro Hac Vice.* Any person who is not otherwise eligible for admission to practice before this Court, but

not admitted to practice in California but is a member of the bar of the Supreme Court of Oregon, may submit a written application for permission to appear and participate *pro hac vice*, which may be granted in the court's discretion. C.D. Cal. R. 83-2.3.1. An attorney is disqualified from permission to practice *pro hac vice* if he resides in California, is regularly employed in California, or is regularly engaged in business, professional, or similar activities in California. *Id.*, R. 83-2.3.2.

It is not for us to surmise that Wheatley, Sr. would have been granted permission to appear and participate *pro hac vice* had he applied, because he never did. Permission is not automatic even for distinguished lawyers. And it is by no means clear that Wheatley, Sr., although otherwise qualified by virtue of his admission to the bar of the highest court in Oregon as well as to the bar of the Court of Appeals for the Ninth Circuit, would not be disqualified on account of regularly engaging in professional activities in California.

---

who is a member in good standing of, and eligible to practice before, the bar of any United States Court, or of the highest court of any State, Territory or Insular Possession of the United States, who is of good moral character, and who has been retained to appear before this Court, may, upon written application and in the discretion of the Court, be permitted to appear and participate *pro hac vice* in a particular case.

Section 83-2.3.2 provides:

*Disqualification from Pro Hac Vice Appearance.* Unless authorized by the Constitution of the United States or Acts of Congress, an applicant is not eligible for permission to practice *pro hac vice* if the applicant:

(a) Resides in California; or

(b) Is regularly employed in California; or

(c) Is regularly engaged in business, professional, or other similar activities in California.

As Wheatley, Sr. was neither admitted to practice by the California State Bar, nor by the Central District of California, I do not believe that he is entitled to an award of attorney's fees. Therefore, I would affirm.

I

At the outset, I disagree with the majority that California rules are irrelevant and that *Birbrower* is inapposite. Maj. op. at 1869, 1872. Rather, in my view, California substantive law applies. *Mangold*, 67 F.3d at 1478; *Z.A. v. San Bruno Park Sch. Dist.*, 165 F.3d 1273, 1276 (9th Cir. 1995). As we said in *Z.A.*, "[t]he *Birbrower* decision defined the practice of law in California within the meaning of Cal. Bus. & Prof. Code § 6125 and described exceptions to § 6125 where the practice of law in California by attorneys not admitted to the California bar is allowed." 165 F.3d at 1276.

*Birbrower* involved a New York law firm that was not licensed to practice law in California. The firm performed legal services in California for a California-based client under a fee agreement stipulating that California law would govern all matters in the representation. The California Supreme Court invalidated the fee agreement to the extent it authorized payment for the services performed by the firm's lawyers in California because practicing law without a license violated California Business and Professions Code § 6125,[5] but not to the extent fees were earned for services performed in New York. Defining what the practice of law "in California" means, the court held that "[t]he primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations." *Birbrower*, 949 P.3d at 5. It concluded that an attorney may practice "in

---

[5]Section 6125 is part of the State Bar Act, and provides: "No person shall practice law in California unless the person is an active member of the State Bar."

California" without being physically present, or appearing in court, in the state. *Id.* at 5, 10 (noting that physical presence in the state is one factor that may be considered but is not exclusive; and rejecting an exception to the general rule that an attorney is barred from recovering compensation for services rendered in another state not involving courtroom appearance).

Wheatley, Sr.'s activity in this California case was substantial. He gave 140 hours worth of advice and counsel, billing at the rate of $550 per hour. His activities ran the gamut of considering the complaint, amending the pleadings, working on discovery, assisting on summary judgment, and reviewing various legal issues that came up during the course of the proceeding. To avoid the application of *Birbrower*, Winterrowd primarily relies on the "federal exception" which, he argues, covers any work an out-of-state attorney does in a matter pending before a United States court, regardless of whether that attorney is admitted or could satisfy the conditions for admission to practice in that court. However, there is no support for construing this exception so broadly. As I read *Birbrower*, attorney's fees may only be awarded for the practice of law in California with permission of the legislature or with consent of a court, state or federal. Wheatley, Sr. had no such leave.

The majority's attempts to distinguish *Birbrower* also fall short. To the extent that the majority suggests that Wheatley, Sr. and his son were in a legal partnership — there was no partnership. (A formal partnership would have made this a very different case.) The relevant firm was Wheatley, Sr.'s Oregon firm, and the only attorney from that firm who worked on this case was Wheatley, Sr., who is not admitted to the California bar. And while ERISA preemption may have once been an issue in the case, that issue fell out after our opinion in 2003. Winterrowd has always maintained that the case presented a contract dispute arising under California law; the plaintiffs were California residents; the underlying con-

tract was to be performed in California; and the matter was litigated in a federal court in California exercising its diversity jurisdiction. Furthermore, *Birbrower* explicitly forecloses the argument that, because Wheatley, Sr. did his work in Oregon, he could not be practicing law "in California." Rather, Wheatley, Sr.'s work on this case appears to be the practice of law "in California" under *Birbrower*'s fact-specific test.

While it may be that courts are sometimes able to say that an out-of-state attorney would "certainly" have been admitted to federal court and that this certainty suffices in lieu of actual authorization, *see Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 168-69 (2d Cir. 1966) (en banc); *Cowen*, 230 Cal.App.2d at 872, there is no basis for saying so here. Unlike the Local Rules of the Southern District of New York at issue in *Spanos*, which permitted "[a] member in good standing of the bar of any state" to be admitted *pro hac vice*, the Local Rules of the Central District make authorization both discretionary and conditional. Wheatley, Sr. neither applied for authorization nor submitted any evidence from which the district court, or we, can be sure that he is not disqualified.[6]

As I see it, Wheatley, Sr. either was or wasn't authorized to practice in California. He was not authorized to practice law by the State of California, or by the Central District. To me, it follows that there is no permissible basis upon which Wheatley, Sr. could give legal advice relating to Winterrowd's action in the District Court for the Central District of California for which attorney's fees are recoverable under California law.

---

[6]To the contrary, Wheatley, Sr.'s declaration in support of Winterrowd's request for fees implicates C.D. Cal. R. 83-2.3.2. He states: "I have worked with [Wheatley, Jr.] on other cases, including one California case in which a multimillion dollar judgment was obtained against Southern California Edison." This raises a question about whether Wheatley, Sr. is "regularly employed in California," or is "regularly engaged in business, professional, or other similar activities in California."

## II

I am not persuaded otherwise by the majority's view that there are alternate grounds upon which Winterrowd can recover fees for Wheatley, Sr.'s work. The majority first suggests that Wheatley, Sr.'s conduct did not rise to the level of "appearing" in court. It reasons that this court has permitted fee recovery for the work of "paralegals, database managers, legal support, summer associates, and even attorneys who have yet to pass the bar." Maj. op. at 1874. Certainly we have, but only when *federal* law was applicable. The case upon which the majority relies, *Nat'l Res. Def. Council, Inc. v. Winter* (*NRDC*), allowed fees for a law school graduate acting as a consultant for NRDC under the Equal Access to Justice Act, 28 U.S.C. § 2412. 543 F.3d 1152 (9th Cir. 2008). However, *NRDC* sheds no light on the availability of attorney's fees for Wheatley, Sr.'s work under *California* law.[7]

Nor do I see how the work done by Wheatley, Sr., or the fees that he requests, can reasonably be analogized to the work done, or the fees charged, by paralegals, database managers, legal support, summer associates, or law school graduates who have yet to pass the bar.[8] Wheatley, Sr. gave Winterrowd's case the benefit of 140 hours of his professional judgment, for which he billed at the rate of $550 per hour. Perhaps I am wrong, but I don't think even a summer associate (yet) commands $550 per hour. Rather, Wheatley, Sr. rendered the sort of services one would expect of a practicing

---

[7]California courts have held that attorney's fees are available for the services of paralegals in order fully to compensate the attorney. *See, e.g.*, *Guinn v. Dotson*, 23 Cal.App.4th 262 (1994). Aside from the implausibility of putting Wheatley, Sr. in the ranks of a paralegal, there is no evidence that the same rationale has any bearing in this case for nothing in this record suggests Wheatley, Jr. would have to pay his father if Wheatley, Sr. were not compensated under the fees statute.

[8]Wheatley, Sr. obviously did not think of his own services this way, as his bill included charges for the work of a "law clerk" at the rate of $100 per hour.

lawyer, at a rate one would expect a practicing lawyer to charge. In fact, the expert justification for his fee request is based on comparable billing rates for senior partners in Los Angeles firms.

Next, the majority supposes that Wheatley, Sr.'s role is similar to "litigation support or consultants, and distinguishable from an 'appearance.' " Maj. op. at 1874. While I agree that Wheatley, Sr. did not "appear" in the district court by signing papers or arguing (as he did in our court on this appeal), I disagree that this answers the right question. The question is whether what he did — not what he didn't do — constitutes the practice of law in California such as to preclude him from recovering statutory fees. Under California law, a non-admitted attorney can practice law without appearing in court or signing papers. *See Birbrower*, 949 P.2d at 5, 10.

Even assuming that Wheatley, Sr.'s role was similar to a "consultant," the majority points to no support in California law for the proposition that "consultants" doing the kind of work for which Wheatley, Sr. billed would be entitled to statutory fees. As the district court thought, this would circumvent the rules of practice as set out in *Birbrower*.[9]

---

[9]The majority insists that if Wheatley, Sr.'s work "do[es] not constitute the unauthorized practice of law" in federal court, "then he is entitled to recover fees." Maj. op. at 1872 n.3. I believe, however, that this conflates two issues. Even if Wheatley's work were not unauthorized under federal law, there would remain the separate question of whether Wheatley, Sr. is entitled to state law statutory fees as a "consultant," and this question would be resolved under California law, which would take into account the policies embodied in *Birbrower*.

At most, the majority suggests that California courts might now see this differently in light of supervening California Rule of Court 9.47 (formerly California Rule of Court 966), which permits out-of-state practitioners to practice law in California under limited circumstances. Maj. op. at 1877, n.5. However, Rule 9.47 only applies to out-of-state attorneys who are already retained by a client or are providing advice to a potential client to assist the client in deciding whether to retain the attorney. Wheatley, Sr.'s services fit neither category.

Finally, the majority finds *Dietrich Corp. v. King Resources, Co.*, 596 F.2d 422 (10th Cir. 1979), persuasive. I do not, because *Dietrich* involved the practice of law, and rules of professional responsibility, in Colorado. *Dietrich* also involved a fee splitting agreement, not a fee-shifting statute which is at issue in our case. As the Tenth Circuit noted, "each state itself determines what is the practice of law and who may practice law." *Id.* at 426. The problem there was whether Colorado counsel could ethically share fees on a contingency basis pursuant to a fee agreement with a law professor who was an expert in legal accounting, was employed as a consultant by lead counsel in actions pending in the United States District Court for the District of Colorado, and was not admitted to practice in Colorado when the services were rendered. *Id.* at 424-26. The Tenth Circuit held that the professor should be treated as a lawyer for purposes of the canons. *Id.* at 426. It concluded that his services did not constitute the unauthorized practice of law under the cases and ethics opinions it studied, given that admitted counsel acted as a filter between the unlicensed professor, the client, and the court. *Id.* However, the Tenth Circuit posed the question, and gave its answer, with respect to "the practice of law *in Colorado*." *Id.* (emphasis added). So, regardless of how sensible the commentary which the majority recites may appear, Maj. op. at 1874-75, it doesn't speak to what constitutes the practice of law *in California*.[10]

---

[10]I also question the support that the majority finds in the ABA ethical opinion that the Tenth Circuit discussed in *Dietrich*. Neither party has raised the applicability of ABA authority to Wheatley, Sr.'s case and there is no indication that the relevant ABA rules are part of the legal landscape in California, which has not adopted the ABA Model Rules of Professional Conduct. *See City and County of San Francisco v. Cobra Solutions*, 135 P.2d 20, 28-30 (Cal. 2006) (rejecting ABA approach of limited "ethical screening" of government attorneys from matters related to former private practice, and disqualifying *entire* City Attorney's office from prosecuting department head's former client); *State Compensation Ins. Fund v. WPS, Inc.*, 70 Cal App. 4th 644, 655-56 (1999) ("[T]he ABA Model Rules . . . do not establish the ethical standards in California, as they have not been adopted in California and have no legal force of their own."). Moreover, *Dietrich* considered the ABA opinion in the context of the Model Code of Professional Responsibility, which has since been superceded by the Model Rules.

The ultimate question for us is whether the legal services Wheatley, Sr. provided to or through his son's firm constituted the practice of law *in California* such as to bar recovery of statutory attorney's fees. The answer must be informed by the substantive law, including the rules of court, of California. Having held that the rules of court in California are irrelevant and *Birbower* is inapposite, the majority necessarily gets both the question, and the answer, off track.

Admission requirements are important. Perhaps they appear "draconian," as the majority puts it, when applied to preclude fees for an experienced attorney of Wheatley, Sr.'s stature. But there is reason for admission requirements that extends beyond any individual attorney.[11] There is no distinguished lawyer, or draconian result, exception. Admissions requirements serve "the legitimate interest of ensuring that all attorneys practicing before the courts 'clear the standard required' by the respective state bar associations." *Gallo v. U.S. Dist. Ct.*, 349 F.3d 1169, 1181 (9th Cir. 2003). Standards differ from state to state, hence the Central District's decision to rely primarily on membership in the California Bar is significant.[12] For members of other state bars, the federal court believes that *it* should determine whether an out-of-state attorney may participate in pending litigation through application of its *pro hac vice* rules. This is just as reasonable as it is for the California courts to impose *pro hac vice* requirements.[13]

---

[11]*See Russell v. Hug*, 275 F.3d 812, 820 (9th Cir. 2002) (noting that California Bar membership requirements "help to ensure a minimum level of acceptable competence for lawyers *on the whole*").

[12]*See Russell*, 275 F.3d at 819 (holding that district courts may rely on the infrastructure provided by state bar associations in meeting their own needs for monitoring attorney admission and practice in the federal courts); *Giannini v. Real*, 911 F.2d 354, 360 (9th Cir. 1990) (outlining reasons for requiring bar applicants to a federal district court in California to be a member in good standing of the California Bar).

[13]*See Pacuilan v. George*, 229 F.3d 1226, 1228-29 (9th Cir. 2000) (rejecting a challenge to California's *pro hac vice* rules, and remarking that without them, "[a] California resident wishing to practice law in California but wanting to avoid the difficult California bar exam could become a member of the bar with the least restrictive admissions requirements, then demand admission to the California bar as a matter of right.").

Creating a way for Wheatley, Sr. to receive fees without being admitted to either forum undermines this well-considered structure.

Wheatley, Sr. took himself out of the loop by failing to apply for admission *pro hac vice*.[14] Having never applied, he is hard pressed to complain about how Rule 83-2.3.1 is written or construed. For this reason, and because entitlement to statutory fees turns on the substantive law of California, this is no occasion for us to rewrite the *pro hac vice* rules of the Central District. Even were the majority correct about how the Central District rule ought to read, who is eligible to get fees under the California Labor Code is an issue of state law.

One thing more. The majority's preface talks of the need to accommodate realities of modern law practice, and takes upon this court the responsibility of doing so to avoid being judicial Luddites. Maj. op. at 1867-68. I don't see it this way. This case presents no issue involving modern technology — there is no question here about the age of personal computers, the Internet, Blackberries, teleconferencing, emails, not even two-way wrist radios. Nor of multinational firms, or massive discovery projects with papers and data located in several states. Thus the opinion cannot, and does not, speak to any of these "realities." Because nothing else is before us, its views about the Central District's *pro hac vice* rules are necessarily limited to the recovery of attorney's fees when the unadmitted attorney is acting, by himself, to help his son.

---

[14]This distinguishes Wheatley, Sr.'s situation from *Spanos*, where the client who sought to defend the attorney's action for fees on the ground of illegality was himself at fault because the client's agent, his in-state attorney, failed to obtain leave for the lawyer to appear *pro hac vice* in federal court. 364 F.2d at 169. In those circumstances the Second Circuit believed the client should not be allowed to escape from a contract to pay fees. *Id.*; *Leis v. Flynt*, 439 U.S. 438, 442 n.4 (1979) (noting that "the precise holding [in *Spanos*] was quite narrow."). By contrast here, fees are not sought from the client but from the opponent under a fee-shifting statute, and the lawyer who seeks the fees is the one who failed to apply for *pro hac vice* admission.

Even if this case were about accommodating realities of the practice of law, which it isn't, that is a task for state legislatures, not federal appellate courts. As the Supreme Court has emphasized, "[s]ince the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions." *Leis*, 439 U.S. at 442. Our court, with good reason, has refrained from crafting exceptions to bar admission, because they are matters for the state legislature. *Z.A.*, 165 F.3d at 1276.

In sum, as I see it, this case involves a statutory fee request governed by the substantive law of the State of California. The question is whether an Oregon lawyer who is not admitted to practice either by the California State Bar or the Central District of California may recover attorney's fees for legal services rendered in aid of a California litigant on California law in an action pending in the Central District. The answer turns on whether his services constitute the practice of law in California under the law of California. I think they do, as it seems to me that extensive advice over a prolonged period of time with respect to California law for a Californian involved in litigation in a California forum meets the *Birbrower* test. This means that Wheatley, Sr. is barred from recovering statutory fees. But even if I am wrong about this, I would not be on board the opinion because the majority does not consider the answer to this question "controlling."

Accordingly, I dissent on this issue; otherwise, I concur.